NELLIE MILLER v. ANCHOR CASUALTY COMPANY
AND OTHERS.
ALBERT R. MILLER v. SAME.[1]

January 26, 1951.

No. 35,468.

*Bang & Nierengarten,* for relators.
*Murnane & Murnane,* for respondents.

[1]Reported in 45 N. W. (2d) 705.

PER CURIAM.

Relators herein have applied to this court for peremptory writs of mandamus ordering the district court for Ramsey county to change the venue of two actions pending in that court to Fillmore county. Relators' demands for change of venue are based upon M. S. A. 542.11(4), which reads as follows:

"The venue of any civil action may be changed by order of the court in the following cases:

\* \* \* \* \*

"(4) When the convenience of witnesses and the ends of justice would be promoted by the change."

The district court for Ramsey county denied relators' motions to change the venue, and relators by these writs seek to review the district court's exercise of discretion in the matter.

It is, of course, well settled in this state that the question whether a trial court has abused its discretion in denying a change of venue can be reviewed by writ of mandamus.[2] Although the trial court is given a wide discretion in granting or denying a motion for change of venue under the provisions of § 542.11(4), still, where the facts show that the denial was an abuse of discretion, this court will not hesitate to compel the change.[3]

March 16, 1948, plaintiff Albert R. Miller, while driving an automobile owned by plaintiff Nellie Miller, collided with what is alleged to have been a concealed trap, negligently constructed by the village of Spring Valley on one of its streets. It is alleged that Mr. Miller suffered personal injuries, which resulted in medical expense to him and occasioned a loss of earnings. It is further alleged that Mrs. Miller suffered a property damage to her automobile and loss of its rental value during the period when it could not be used. Respondents were, at the time of the accident, the insurer and agents of the insurer of the village of Spring

[2]State ex rel. Security State Bank v. District Court, 150 Minn. 498, 185 N. W. 1019; State ex rel. Ward v. District Court, 200 Minn. 632, 274 N. W. 623.

[3]King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278.

Valley. They are alleged to have entered into negotiations with plaintiffs relative to a settlement of plaintiffs' claims against the village of Spring Valley. It is further alleged—in detail which is not important here—that respondents, by negotiations not in good faith and by fraud, deceit, and abuse of confidence, caused relators to forego making any legal claim against the village of Spring Valley until such time as their claim had been barred by the provisions of § 465.09, which requires that such claims be filed within 30 days after the alleged loss or injury has occurred.

On May 4, 1950, relators commenced separate actions in tort against respondents for damages resulting from their loss of causes of action against the village of Spring Valley as a result of the fraud practiced upon them by respondents. The actions were commenced in the district court for Fillmore county, where respondent corporation has a resident agent and a place of business. Thereafter the venue was, by demand of respondents, changed to Ramsey county. Relators then made a motion in each case to remand their actions to Fillmore county for convenience of witnesses and to promote the ends of justice. In support of their motions, affidavits were submitted stating that relators' causes of action were for damages resulting from fraud and deceit perpetrated on relators with respect to their tort claims against the village of Spring Valley, respondents' policyholder. The affidavit in Mr. Miller's case then names four individuals who were witnesses concerning the occurrence of the accident, the condition of the streets, and the circumstances surrounding the accident. It names three individuals who worked on Mrs. Miller's automobile after the accident and who were claimed as necessary witnesses to prove value, depreciation, and type of damage to the automobile as a result of the accident. It names three individuals who are said to be familiar with the circumstances under which respondents allegedly defrauded and deceived relators. It names six physicians who will necessarily be called to testify as to the physical condition of Mr. Miller at the time the accident occurred, the injuries he sustained in the accident, and the prognosis

of his physical condition. The affidavit in Mrs. Miller's case is in all respects similar, except that it does not list any of the six physicians named as witnesses in Mr. Miller's affidavit.

Of the total number of witnesses who will be called in both actions, 11 reside in Spring Valley, Fillmore county. Spring Valley is 18 miles from Preston, the county seat of Fillmore county, where these actions will be tried if remanded to that county. On the other hand, Spring Valley is 115 miles from St. Paul, Ramsey county, the present venue of these actions. Four of the witnesses to be called by relators reside in Austin, which is 50 miles from Preston and 100 miles from St. Paul. Relators' attorneys also reside in Austin. One other witness to be called by relators resides in Rochester, which is 48 miles from Preston and 82 miles from St. Paul.

In addition to those statements in the affidavits, it is stated that it may be necessary for the jury in each action to have a view of the scene of the accident. It is further stated that in the office of their local agency in Spring Valley respondents have certain records and documents which relators may wish to have presented to the court. As a matter bearing on the length of time within which these cases can be brought to trial, it is stated that, because of the heavy backlog of cases in Ramsey county, these actions can be tried more expeditiously in Fillmore county, where no backlog of jury cases exists. Respondents have presented no evidence, either in the form of counteraffidavits of merits or otherwise, in opposition to relators' motions for change of venue. Respondents' primary contention in opposing this change of venue is that the affidavits to support the motions for change of venue should have set forth in detail the testimony to be given by each witness, together with sufficient additional information for the trial court to determine whether the witnesses are competent and whether their testimony is admissible and necessary. As additional contentions, respondents urge that so long a time has transpired since the time of the accident that a jury view would be useless and that, by reason of relators' delay in bringing these

actions, they should not be allowed to complain of the delay incident to a trial in Ramsey county.

With respect to respondents' first contention, no precedents have been cited, and this court has found none, specifying the exact amount of detail that must be included in an affidavit supporting a motion to change venue for convenience of witnesses. We think, however, that it is not necessary for a party to expose all his evidence in the affidavit supporting his motion to change venue by stating in detail what each witness will testify. We do not consider it necessary or desirable to specify a rigid formula as to how much information must be supplied in a motion to change venue for convenience of witnesses. We think that it is sufficient in the present cases to state that we have compared relators' affidavits with those received over the same objection in King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278, and have found that those received in the King case without discussion are but slightly more detailed than those in the present cases. If respondents thought that any of the witnesses named by relators were incompetent or that their testimony would be unnecessary or inadmissible, they should have submitted counter-affidavits to the district court so stating. See, Badger v. Kishkunas, 203 Minn. 602, 281 N. W. 878. It is apparent that if relators find it necessary and are entitled to call the witnesses named in their affidavits, they are amply justified in requesting this change of venue, and it was an abuse of discretion to deny their motion. State ex rel. Kulla v. District Court, 200 Minn. 633, 274 N. W. 673; Badger v. Kishkunas, 203 Minn. 602, 281 N. W. 878; State ex rel. Berg v. District Court, 205 Minn. 407, 286 N. W. 355; King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278.

■ That the accident occurred and the causes of action arose in Fillmore county,[4] that a trial in that county would facilitate

---

[4]King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278.

the taking of a view by the jury,[5] and that it would be expedited because of the state of the calendar there[6] are all factors which, in the absence of a showing or claim of inconvenience to the opposing party,[7] form a sufficient basis for directing a change of the venue of these actions. Although we obviously cannot say as a matter of law that a jury view will be necessary, the possibility that a view will aid the jury in understanding the evidence in these actions cannot be precluded merely because some period of time has transpired since the accident occurred. Although relators have delayed bringing these actions for some time, it appears that the delay has been in no small part due to respondents' own actions. Hence we find no merit in their contention that further delay in bringing these actions to trial cannot be complained of by relators.

Respondents' final contention, that the witnesses to be called by relators to prove damages arising from injury to person and property are not necessary because this is an action in fraud, has no merit, since the measure of damages sought in these actions has a direct relation to the amount of damages which would have been recovered in a tort action against respondents' policyholder, the village of Spring Valley.

Peremptory writs granted.

---

[5] State ex rel. Ward v. District Court, 200 Minn. 632, 274 N. W. 623; Badger v. Kishkunas, 203 Minn. 602, 281 N. W. 878.

[6] In Olivier v. Cunningham, 51 Minn. 232, 53 N. W. 462, the court indicated that the state of the business in the two venues might be a proper consideration in determining whether justice would be promoted by a change of venue. In McNamara v. Eustis, 46 Minn. 311, 48 N. W. 1123, one of the reasons stated for upholding the denial of a motion to change venue was that the party opposing the change would have lost the benefit of going to trial immediately and would have had to wait for the next general term of court in the new venue.

[7] In prior cases, the absence of a valid showing of inconvenience to the party opposing the change of venue has been considered. Olivier v. Cunningham, 51 Minn. 232, 53 N. W. 462; King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278.