PHYLLIS BERRY, A MINOR, BY KENNETH BERRY, HER FATHER
AND NATURAL GUARDIAN, v. NORTH PINE ELECTRIC
COOPERATIVE, INC.[1]

November 16, 1951.

No. 35,686.

*William H. DeParcq* and *Donald T. Barbeau,* for relator.
*George E. Sausen* and *Hunt, Palmer & Hood,* for respondent.

PER CURIAM.

On September 14, 1951, an alternative writ of mandamus was issued by this court directing the district court for Pine county and the Honorable Carl W. Gustafson, one of the judges thereof, to remand this action to Hennepin county for trial or to show cause before this court.

The action was commenced in the district court for Hennepin county October 18, 1950. It is for the recovery of damages sustained by Phyllis Berry, a minor, hereinafter referred to as plaintiff, for injuries suffered when she was burned by defendant's power line, which had broken, separated, and fallen to the ground on the farm of plaintiff's grandparents near Hinckley in Pine county. The accident occurred September 17, 1950, about 10:30 a. m. Phyllis was six years old at the time.

October 30, 1950, on affidavit and motion of defendant, pursuant to M. S. A. 542.09, the venue of the action was changed to Pine county, where defendant was domiciled. Immediately thereafter, pursuant to § 542.11, plaintiff moved to remand the action to Hennepin county (1) for the convenience of witnesses, and (2) upon the ground that a fair and impartial trial could not be had in Pine county. On August 20, 1951, the court made its order denying plaintiff's motion. These proceedings followed.

[1] Reported in 50 N. W. (2d) 117.

At the hearing in support of the first contention, plaintiff submitted evidence that all medical experts involved in the case except one, Dr. H. W. Henry, were residents of Hennepin county and would suffer great inconvenience if required to travel to Pine county for the trial; that all hospitalization for plaintiff was at the University Hospitals in Minneapolis, which retained all charts and records therein; that the only actual eyewitnesses to the accident were residents of Minneapolis; that a number of additional witnesses were resident there; and that the remaining witnesses who might be called by defendant could readily make the trip from Pine county to Minneapolis.

On the second ground, plaintiff submitted evidence indicating that she might not obtain a fair trial in Pine county, first, because many of the jurors to be called, as shown by the records of the Pine county district court for the past five years, would be members and shareholders of defendant, a coöperative, whose rates for electric power might increase if a substantial judgment were obtained by plaintiff; and, second, because of prejudice or ill feeling against the parents of plaintiff by reason of their past conduct there in matters not connected with the litigation.

In a memorandum attached to its order denying plaintiff's motion, the trial court set forth its reasons as follows:

"The evidence before us as to the number of witnesses to be called by the respective parties is in conflict. It would appear that the only witnesses who would benefit by a change of venue are the plaintiff's medical experts. In this aspect the situation is not different from that in all other cases where Twin City doctors are called to testify in any other place outside those jurisdictions.

"A change of venue should not be made simply to accommodate the witnesses of one party if thereby the witness for the other party will be equally discommoded."

"* * * It [defendant] has some 1300 members or patrons residing in Pine County, nearly all of whom are stockholders. * * * over a period of the last five years, approximately 28% of the persons drawn for jury service in said County were members and stockholders of the defendant company. From these facts standing alone, coupled with the claim that 'rumors' are circulated in the area that a large verdict in this case would result in increased rates for electric power (a fact denied by defendant), it would appear plaintiff's claim has merit. * * *

"* * * stock ownership in the defendant corporation is a ground for challenge for implied bias, and it is the common practice * * * for the Court to ascertain the existence of the ground for such bias and on its own motion excuse the prospective juror if it appears the ground exists. * * *"

"* * * any prejudice or ill feeling which may have existed or may now be existing against the parents of the little girl involved is localized to a very limited area and * * * has no relation or connection with the present cause of action."

Primarily through affidavits for the most part undisputed, the record indicates the following with reference to the medical testimony which may be submitted:

DR. OWEN H. WANGENSTEEN, chief of the department of surgery, University Hospitals, Minneapolis, who performed two amputations on the left arm of the child and various other operations upon her over a period of several months for which extensive treatment was required. His affidavit sets forth that he and other doctors in his department would find it difficult, if not impossible, to testify in the case in Pine county; and that it would be more convenient, less expensive, and would interfere less with the care and treatment of other patients at University Hospitals if the trial were held in Minneapolis.

DR. IRVINE McQUARRIE, chief of the department of pediatrics of the University Hospitals, under whose direction and supervision the plaintiff was also a patient. His affidavit sets forth that neither he nor the other doctors on his staff familiar with plaintiff's condition would be required to be away from their duties in Minneapolis for more than an hour or two at a time if the case were tried in Minneapolis, but that a trial in Pine county would require them to remain away from their work for approximately one day, to the detriment of their work in Minneapolis.

DR. SAMUEL G. BALKIN states that he is a specialist in plastic surgery, and that he examined plaintiff at the request of her counsel. He describes in detail plaintiff's condition, and sets forth that his operating schedule at various Minneapolis hospitals, as well as his duties at the Veterans Hospital and the University Hospitals, would make for a prohibitive expense if he were required to testify in Pine county rather than in Hennepin county.

DR. DAVITT FELDER, chief resident surgeon in the division of surgery at the University Hospitals, sets forth that it would be more convenient and less expensive for him and other doctors working under him to testify in Minneapolis rather than in Pine county with reference to plaintiff's injuries and treatment at the University Hospitals.

DR. CONRAD I. KARLEEN examined plaintiff at defendant's request. His office is in Minneapolis, and he makes no claim that it would be inconvenient for him to testify in Pine county.

DR. H. W. HENRY, whose name as a prospective witness was submitted by defendant, sets forth in an affidavit and in a statement made by him that

he is a resident of Hinckley, Pine county; that he was called at the time of the accident and "got out about six miles and \* \* \* met them"; that he took the child's pulse but did not examine her further at that time; that upon arrival in town he examined her, made a diagnosis, gave her a hypodermic, directed that she be taken to University Hospitals, and made arrangements for her to be taken to Minneapolis.

It is undisputed that the child's only hospitalization was at the University Hospitals in Minneapolis, where, in addition, she received out-patient treatment at various times. All hospital records, X rays, and other data on her condition are located there.

In addition to the medical experts, both parties submitted the names of a number of lay witnesses who might be called at the trial. The affidavits of those submitted by plaintiff show the following:

PHINEAS S. NISSENSON, a registered electrical engineer, formerly employed by the Northern States Power Company, who at the request of plaintiff's counsel investigated and reported concerning the circumstances of the accident, stated that his offices are in Minneapolis, and that his presence in court will be required throughout the trial to listen to the testimony of any electrical experts called by defendant.

RONALD BRANT, a witness to the accident and the first to reach plaintiff thereafter, discloses that for the past four years he has resided in Minneapolis and has been employed there for some time past.

FERN FORD, a witness to the accident, since June 1949 has resided in the city of Minneapolis.

Defendant likewise submitted a long list of names of persons it expected to call as witnesses who, defendant asserted, would be inconvenienced if the trial were held in Hennepin county. Plaintiff's counsel, through his investigator, conferred with the prospective witnesses submitted by defendant to ascertain their knowledge of the case, their place of residence, and other pertinent facts. An examination of both the affidavits submitted by defendant and the evidence obtained by plaintiff with respect to these witnesses indicates that the following facts with reference thereto are uncontroverted:

TENHO NIEMON, of Finlayson, general manager of defendant corporation, conducted an extensive investigation of the facts but was not an eyewitness to the accident.

HENRY SCHEELER, of Finlayson, a lineman employed by defendant, is expected to testify as to the maintenance of defendant's lines and equipment at the time of the accident.

THURY NIEMONEN, of Finlayson, a lineman employed by defendant, is expected to testify as to the installation of defendant's lines on the property in question.

CHARLES BALDWIN, of Route 3, Hinckley, is married to the grandmother of the child and is the owner of the farm on which the accident took place. He was not at home at the time of the accident. He states that he knows there is considerable prejudice against the parents of the child in Pine county and that other witnesses mentioned in defendant's affidavit came after the accident. He is willing to testify in Hennepin county and believes that plaintiff cannot receive a fair and impartial trial in Pine county.

LOTTIE M. (MRS. CHARLES) BALDWIN, of Route 3, Hinckley, states that many witnesses listed by defendant do not reside in Pine county.

H. J. BUCHL, of Hinckley, town constable, was employed as observer for the United States Weather Bureau. Defendant expects to call him to testify as to weather conditions. He was absent from the state the day of the accident and for some time prior and subsequent thereto. He could testify only from official records, which would be admissible in evidence in any event upon proper certification without the local observer.

PETER LARSEN, of Hinckley, arrived at the scene of the accident some time after its occurrence. When he arrived the little girl was crying. He saw Fred Hertenstein and Ronald Brant there at the time. They assisted in lifting the child into the car to take her to Hinckley. He saw some of defendant's repairmen shortly after the accident but did not talk to them and does not know what caused the wire to break. He never made any inspection of the wires or poles after the accident.

ELDEN R. BRANT, of Route 3, Hinckley. His affidavit is on file and sets forth that in his opinion plaintiff will not receive a fair and impartial trial in Pine county. He arrived about five minutes after the accident and is expected to be called by defendant to testify as to what took place up to the time defendant's line was repaired.

ARLEY KENDALL, JR., of Route 3, Hinckley. Defendant expects him to give testimony concerning the time the wire broke and conditions at the scene thereof. He assisted in moving plaintiff to Hinckley, where she was placed in an ambulance and taken to University Hospitals. He made no examination of the equipment. He does not know what caused the wire to break. He sets forth that there is considerable prejudice against the parents of plaintiff, and it is his belief that plaintiff would not receive a fair and impartial trial in Pine county.

LORETTA (MRS. ARLEY) KENDALL, JR., of Route 3, Hinckley. Defendant sets forth that she is expected to give testimony as to the time the wire broke. She was not at the scene of the accident. She does not know con-

ditions there. She sets forth that plaintiff could not receive a fair and impartial trial in Pine county.

JOE ELIASON, of Route 3, Hinckley, is expected to give testimony concerning the weather and conditions at the accident and on defendant's lines before the accident. His affidavit taken by plaintiff indicates that he knows nothing about the facts. He is expected to testify that the line broke near the insulator, a fact which may be undisputed. He cannot remember anything unusual about the weather and knows nothing about the power lines and poles, except that the poles were standing and the lines were strung between them.

MRS. JUNE ABRAHAMSON, of Route 3, Hinckley, is expected to testify as to the time of the first notice to defendant that its line was down. She did not go to the scene of the accident and knows nothing about the facts, except that Mr. Hertenstein, Jr., arrived at her store shortly afterward and asked her to notify the power company that its line was down; that she so notified them at 10:45 a. m. that date; and that otherwise she knows nothing about the case.

DEAN KENDALL, of Route 3, Hinckley, is expected to give testimony for defendant fixing the time of notice and conditions of the same. He arrived after the accident occurred. He will not be available to testify, as he is now in the United States Army stationed in Wyoming.

FRED M. HERTENSTEIN, of Route 3, Hinckley, is expected to give evidence for defendant fixing the time of the accident and notice to the defendant and of conditions at the scene when he arrived after the accident. He did not examine the insulator, but knows that the wire was broken.

ARTHUR T. GILBERTSON, of Route 3, Hinckley, is expected to testify for defendant concerning weather conditions and conditions at the accident relative to defendant's line. He did not arrive at the accident until after removal of plaintiff. He stated that he does not know what caused it or how it happened and knows nothing unusual about weather conditions.

JAMES HAINES, of Route 3, Hinckley. He is expected to testify for defendant as to the time of the accident and conditions prevailing there. He also will not be available to testify, as he is now in the United States Army stationed in Texas.

FRED A. HERTENSTEIN, of Route 3, Hinckley, is expected to testify concerning conditions at the scene of the accident and the time of the notice to defendant. He arrived after the accident and can testify principally as to undisputed facts, such as the fact that the wire was broken down, the child burned, the ground wet, and the time of notice as fixed by Mrs. Abrahamson at 10:45 a. m. that date.

VELMA O. BERRY, of Route 3, Hinckley, is the mother of plaintiff and states that in her opinion plaintiff will not receive a fair trial in Pine county.

ELEANOR BRANT, who resides a few miles out of Minneapolis near New Brighton, is expected to testify for defendant concerning facts leading up to the accident. She states that it will be more convenient for her to testify in Minneapolis.

WILLIAM MERRITT, the photographer who took pictures of the scene of the accident. Plaintiff's counsel stipulates that the pictures will be admitted without objection.

From the foregoing it would seem clear that the only prospective witnesses submitted by defendant having some knowledge of factors which might be material at the trial and who might be inconvenienced if the case were tried in Minneapolis are the three employes of defendant and possibly Peter Larsen, Joseph Eliason, and Fred A. Hertenstein. Of the many other witnesses submitted by defendant, the record seems uncontroverted either that they (1) reside in or near Minneapolis, or (2) would not be inconvenienced by a trial in Hennepin county, or (3) know little or nothing concerning the actual facts surrounding the accident. It also seems apparent that many of them could testify only as to matters not in serious dispute or which otherwise may not be of great materiality. A number of these prospective witnesses state quite frankly that plaintiff would not receive a fair and impartial trial in Pine county.

On the second ground urged by plaintiff as establishing that the ends of justice require that the venue be transferred from Pine county to Hennepin county, the record shows the following undisputed facts: Defendant is an R. E. A. coöperative corporation engaged in selling electrical power in Pine, Aitkin, Kanabec, and Mille Lacs counties. Its principal office and place of business is in Pine county. It has approximately 1,300 stockholders who are residents of Pine county. Each customer is required to purchase a membership entitling him to attend and vote at the annual meetings of the company. As a coöperative, the rates charged its customers are subject to adjustment depending on its profit and loss.

It further appears from an exhibit prepared by the clerk of the district court of Pine county that, of the petit jurors serving the district court there between 1946 and 1950, a large percentage were members and customers of defendant corporation, more specifically as follows:

| Terms of Court | No. of Jurors | Jurors Members of Defendant | Percentage of Jurors Members of Defendant |
|---|---|---|---|
| Spring 1946 | 44 | 16 | 36% |
| Fall 1946 | 36 | 7 | 17% |
| Spring 1947 | 36 | 11 | 31% |
| Fall 1947 | 36 | 6 | 16% |
| Spring 1948 | 33 | 11 | 31% |
| Fall 1948 | 36 | 12 | 33% |
| Spring 1949 | 36 | 9 | 25% |
| Fall 1949 | 36 | 10 | 28% |
| Spring 1950 | 36 | 14 | 39% |
| Fall 1950 | 36 | 8 | 22% |

These figures make it fairly obvious that if the trial were held in Pine county the courtroom and the corridors surrounding it, as well as the restaurants where the jurors must eat, would contain a large number of stockholders and members of defendant corporation, including many jurors, even though the latter might be challenged for bias and excluded from sitting in the actual trial of the lawsuit. All of them would without doubt be conscious of the fact that a large verdict in the litigation might affect their rates for power furnished by defendant.

Plaintiff's motion was further supported by affidavits and exhibits indicating that the parents of plaintiff do not have a particularly favorable record in Pine county, and that much local prejudice existed against them, a factor which plaintiff asserted might affect the child's prospects of gaining a fair and impartial trial. However, the evidence with reference to this factor was so much in conflict and so doubtful that it is not given consideration in our determination here.

1. The basic rules to be given foremost consideration in determining the question here are:

(1) Where there is reason to believe that it will be impossible to obtain a fair and impartial trial in the county selected because of local prejudices, feelings, and opinions, the ends of justice require that a change of venue be granted.

(2) The ultimate determination of this question is a matter resting very largely in the sound discretion of the trial court. Sander v. Dieseth, 230 Minn. 125, 40 N. W. (2d) 844; Chellico v. Martire, 227 Minn. 74, 34 N. W. (2d) 155; State ex rel. Berg v. District Court, 205 Minn. 407, 286 N. W. 355; Badger v. Kishkunas, 203 Minn. 602, 281 N. W. 878; State ex rel. Kulla v. District Court, 200 Minn. 633, 274 N. W. 673.

2. While it is true that a large discretion rests with the trial court in cases of this kind, the uncontroverted facts in each case must determine whether the court has exercised or abused that discretion. Plaintiff here has made an extremely strong showing to establish her right for a change of venue, both from the viewpoint of the convenience of witnesses and the possibility of prejudice. On the other hand, defendant has not shown to any great extent why it will be inconvenienced if the venue is changed to Hennepin county. Three of its employes would require transportation there, and a few other witnesses, none of whom actually saw the accident, might be required to travel to Minneapolis. It is difficult to imagine what a view of the premises where the accident occurred would disclose that could not readily be demonstrated through photographs already taken. When the inconvenience to these few proposed witnesses of defendant by a trial in Hennepin county is weighed against the large number of highly trained medical experts and actual eyewitnesses to the accident now residents of Hennepin county and against the strong possibility that a fair trial might not be had in Pine county, it would seem that the court's denial of plaintiff's motion for a change of venue constituted a clear abuse of discretion. See, Miller v. Anchor Cas. Co. 233 Minn. 87, 45 N. W. (2d) 705; King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278; State ex rel. Berg v. District Court, supra; Badger v. Kishkunas, supra; State ex rel. Kulla v. District Court, supra; State ex rel. Ward v. District Court, 200 Minn. 632, 274 N. W. 623.

Let the writ issue as prayed for.