# STATE v. TILMER EUGENE THOMPSON.

123 N. W. (2d) 378.

September 13, 1963—No. 39,238.

*Hyam Segell* and *William S. Fallon,* for relator.
*William B. Randall,* County Attorney, for respondent.

PER CURIAM.

This is an application for a peremptory writ of mandamus to compel the District Court of Ramsey County to transfer the venue of the above action from Ramsey County to Hennepin County.

It would be undesirable at this time to discuss the facts of the case in detail. It is enough to say that defendant, a prominent citizen of St. Paul, has been indicted by the grand jury of first-degree murder, it being alleged that he procured another to murder his wife.

At the outset, some legal propositions that have been raised should be disposed of.

■ Mandamus has been adopted by this court as a proper procedure to review a decision of the trial court denying a motion for a change of venue.[1]

■ In reviewing an order of the trial court by mandamus, this court will consider only those matters presented to the trial court. This court sits in review and does not try the facts.[2]

■ We have long ago decided that it is proper, and often preferable, to determine the place of trial prior to the actual trial of the case rather than afterwards.[3]

■ Ordinarily, in determining whether the place of trial should be

---

[1] Miller v. Anchor Cas. Co. 233 Minn. 87, 45 N. W. (2d) 705; State ex rel. Nesseth v. District Court, 186 Minn. 513, 243 N. W. 692.

[2] State ex rel. Minneapolis, St. P. & S. S. M. Ry. Co. v. District Court, 161 Minn. 176, 201 N. W. 298; State ex rel. Austin Mutual Ins. Co. v. District Court, 194 Minn. 595, 261 N. W. 701.

[3] Delasca v. Grimes, 144 Minn. 67, 174 N. W. 523; State ex rel. Security State Bank v. District Court, 150 Minn. 498, 185 N. W. 1019.

changed in the interests of justice, the trial court has a wide discretion and we will not disturb the exercise of that discretion unless we are convinced that a fair trial cannot be had at the place where the case ordinarily would be tried.[4] When it appears likely that it is impossible to procure a fair trial before an impartial jury in the county in which the crime was committed, the venue ought to be changed to a county in which an impartial jury can be obtained.[5]

In State ex rel. Warner v. District Court, 156 Minn. 394, 400, 194 N. W. 876, 878, we said:

"* * * It is not necessary that convenience of witnesses and the ends of justice *require* the change. It is sufficient that they would be *'promoted.'* "

In Berry v. North Pine Elec. Co-op. Inc. 235 Minn. 562, 569, 50 N. W. (2d) 117, 123, we said:

"Where there is reason to believe that it will be impossible to obtain a fair and impartial trial in the county selected because of local prejudices, feelings, and opinions, the ends of justice require that a change of venue be granted."

The governing statute is Minn. St. 627.01, which reads:

"Every criminal cause shall be tried in the county where the offense was committed, except as otherwise provided by law, unless it shall appear to the satisfaction of the court, by affidavit, that a fair and impartial trial cannot be had in such county, in which case the court before whom the same shall be pending, if the offense charged in the indictment is punishable with death or imprisonment in the state prison, may direct the person accused to be tried in some other county, in the same or any other judicial district in the state, where a fair and impartial trial can be had; but the party accused shall be entitled to one change of venue only."

---

[4] State ex rel. Nesseth v. District Court, 186 Minn. 513, 243 N. W. 692; King v. Schultz, 231 Minn. 569, 43 N. W. (2d) 278 (other cases collected in opinion).

[5] See, Berry v. North Pine Elec. Co-op. Inc. 235 Minn. 562, 50 N. W. (2d) 117.

The claim here is that so much publicity has been given to this case that it is impossible to obtain an impartial jury in Ramsey County. Courts can do little to restrain news media from printing or broadcasting what they claim is news, but, when it appears that the public has been subjected to so much publicity about a case that it seems unlikely that a fair trial can be had in the locality in which the trial normally would be held, the court can and should see to it that the trial is transferred to another locality in which it is more probable that a fair trial can be had. Probably no case in the memory of anyone in this locality has aroused so much interest and so much discussion as this one. Over a period of several months hardly a day has elapsed when something has not been said or written in a news medium of one kind or another. It is important that the constitutional guaranty of the freedom of the press not be curtailed if we are to exist as a free people. It is equally important, however, that, when the unrestrained exercise of this right clashes with the right of an accused person to be tried by an impartial jury having no preconceived opinions as to the guilt or innocence of the accused, the rights of such accused person must be protected by transferring the case to a locality where the public may not have been influenced as much by the publicity that has been given the case.

In Irvin v. Dowd, 366 U. S. 717, 730, 81 S. Ct. 1639, 1647, 6 L. ed. (2d) 751, 760, this thought was expressed by Mr. Justice Frankfurter in a concurring opinion, where he said:

"* * * This Court has not yet decided that the fair administration of criminal justice must be subordinated to another safeguard of our constitutional system—freedom of the press, properly conceived."

The vice of the publicity given this case is not in printing or disseminating factual news but in printing and broadcasting what purports to be the opinions of people who are supposed to know the facts. A few samples of these statements will suffice to show the nature thereof. In one newspaper, a statement chargeable to Lt. George Barkley, head of the police homicide unit, stated that "the big fish—the one who is paying the bills and who engineered it from the beginning—remains to be caught." In a later story, an unnamed police official was reported as having said with regard to the person believed to have planned the mur-

der: "We could have arrested this man weeks ago but we don't want to arrest him until our case is so overwhelmingly concrete it leaves no possible chance for acquittal in a courtroom."

In another statement in which the insurance carried by defendant on the life of his wife was discussed, the chief of police of St. Paul was quoted as having said: "I said it seems clear that the Thompson murder case is one of murder for profit."

■ In view of the added publicity that undoubtedly will be given to this decision, it is not desirable that we further discuss statements we believe have created a prejudicial atmosphere within Ramsey County. We have examined the numerous newspaper articles that were submitted to the trial court, and we are convinced that many of them are of such a nature that it is highly unlikely that an impartial trial can be obtained in Ramsey County.[6]

■ The motion in this case is for a change of venue to Hennepin County. The state argues that if it is impossible to obtain a fair trial in Ramsey County it is equally unlikely that an impartial jury can be obtained in Hennepin County. There is much merit to this argument. However, defendant himself has chosen Hennepin County as a place where he believes he can obtain as fair a trial as can be obtained anywhere. Ordinarily it is not permissible for a defendant, on a motion for change of venue, to select the county to which the venue should be changed. That is a matter that rests largely in the discretion of the trial court, who, having found that a fair trial cannot be obtained where the crime was committed, should decide what county in the state is most likely to afford a fair trial. In view of the fact that in this case defendant has selected Hennepin County in his motion for a change of venue, we are inclined to grant his request rather than to send the case back to the

---

[6]The recent decisions of the United States Supreme Court indicate the necessity for granting a change of venue when publicity has reached a point where it is unlikely that an impartial jury can be obtained in the locality in which the case normally would be tried. See, for instance, Rideau v. Louisiana, 373 U. S. 723, 83 S. Ct. 1417, 10 L. ed. (2d) 663; Irvin v. Dowd, 366 U. S. 717, 81 S. Ct. 1639, 6 L. ed. (2d) 751; Janko v. United States, 366 U. S. 716, 81 S. Ct. 1662, 6 L. ed. (2d) 846, the facts of which are found in Janko v. United States (8 Cir.) 281 F. (2d) 156.

trial court for a determination by it of the proper county to which the case should be transferred.

It is therefore ordered that the writ of mandamus issue as prayed for.