THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ROBERT LUEDECKE, Defendant.

Fourth Department, April 9, 1965.

*John C. Little, Jr., District Attorney,* for plaintiff.

*William L. Clay* for defendant.

*Per Curiam.* On this motion to remove the trial of the defendant indicted for murder, first degree, from the County of Monroe, the defendant asserts that he will be unable to receive a fair and impartial trial in Monroe and some 14 nearby counties (Code Crim. Pro., § 344, subd. 2; § 346, subd. 2) by reason of a news telecast in which the defendant was shown re-enacting the alleged crime before the TV camera of one of the largest TV stations in this area. It is undisputed that there is a population of over 1,000,000 in said counties and that a survey of viewers indicates that there are approximately 40,200 homes which normally view the newscasts of this station. The presentation of the film on two news telecasts in the evening at 6:15 and 11 o'clock, defendant contends, seriously impaired, if not destroyed, his right to a fair trial.

After indictment and assignment of counsel, a hearing was held in County Court upon defendant's motion to suppress the use of the film by the District Attorney. It was agreed by the District Attorney that it would not be used in defendant's trial. The defendant now submits the testimony taken at the hearing as the sole basis for his claim that a fair trial cannot be had. No other affidavits are presented in support of this motion except those of the defendant and his attorney.

The film used was admitted in evidence at the hearing and we have viewed it and read the statement made by the broadcaster simultaneously with the showing of the film.

The defendant was taken into custody at about 4:30 A.M. on May 3, 1963 and after interrogation by police officers and the then District Attorney he was taken, an hour later, to the Canada Dry plant. It was on those premises that the night watchman had been slain about five months before, and for whose murder the defendant stands indicted. Accompanying the defendant were about seven police officers, some in uniform and others in plainclothes, a police stenographer, the television cameraman and the then District Attorney of Monroe County. The defendant was without counsel or anyone else associated with him and was required to re-enact the commission of the alleged crime. The cameraman proceeded to take approximately 100 feet of film showing the defendant gaining entrance through a window, prying a lock from a door with a crowbar which is claimed to be the murder weapon, driving a lift truck with which he broke the combination of the safe, and being surprised by the night watchman (whose part was played by a detective) who jumped upon defendant's back while defendant had the crowbar in his hand. At this point the District Attorney, who was in the picture at all times, took the crowbar from defendant.

The newscaster announced the film by stating: "murder of night watchman solved—confessed killer re-enacts crime". The following is a part of the commentary of the newscaster during the running of the film:

"A 33 year old factory worker has been charged with first degree murder in the slaying of a night watchman at the Mt. Read Blvd. plant of the Canada Dry Corporation last December 16th. Robert Luedecke of 4 Rhona Place—a Gleason Works employee—had been under suspicion for a long period of time—he was taken into police custody about 8 last night—then in the pre-dawn hours of morning—Luedecke was returned to the scene of the killing—where he re-enacted his crime. As District Attorney John Conway and police officers questioned

him at the scene — a stenographer recorded his comments — and for the first time — the re-enactment of a capital crime in Rochester was recorded on film — with Channel 8 news cameraman Charlie Planert taking motion pictures of this most unusual sequence. After showing investigators how he entered the building by crawling through a window — Luedecke then retraced his route in the building. And admitted using a fork lift truck in an effort to batter open the safe. * * *

" A dramatic highlight of this morning's bizarre re-enactment occurred when detective Jack Gerbino assumed the role of the 63 year old watchman Harry Antes * * * who came upon Luedecke and grabbed him from behind. It was then that Luedecke struck Antes with the crowbar — then hit him another time and dragged him away. The night watchman's body was found the next morning. * * *

" The murder charge was announced at 11:25 this morning — the case was closed 140 days after the crime."

We reiterate what we said in *People* v. *Sepos* (22 A D 2d 1007) that: " While we make no comment on the right of freedom of the press or the permissible limits of the newsmen's endeavors, we think, if the allegations of the petition are true [there is no doubt about the truth of the allegations in the instant motion] that the active participation by law enforcement officers in the events alleged to have occurred was reprehensible, shocking and difficult to understand in a civilized, lawful community." The active participation by the District Attorney (as well as the police officers) far exceeded the responsibilities of that office, the duties of which require not only the prosecution of crime but also the obligation to safeguard and insure the constitutional rights of defendants to a fair and impartial trial. The effect of what was done in the case at bar was " effectually to poison the fountain of justice before it begins to flow ". (*Rex* v. *Parke* [1903] 2 K. B. 432, 438.)

The Supreme Court in an appeal from a conviction of murder reversed the conviction because a motion for change of venue, based upon similar grounds as in the instant case, had been denied (*Rideau* v. *Louisiana,* 373 U. S. 723). In that case the television film showed a 20-minute " interview " with the defendant when he was interrogated by the Sheriff and during which defendant made admissions of the robbery and murder. The court made this pertinent observation at page 726: " For anyone who has ever watched television the conclusion cannot be avoided that this spectacle, to the tens of thousands of people who saw and heard it, in a very real sense *was* Rideau's trial — at which he pleaded guilty to murder. Any subsequent court

proceedings in a community so pervasively exposed to such a spectacle could be but a hollow formality.'' And at page 727: '' ' Due process of law, preserved for all by our Constitution, commands that no such practice as that disclosed by this record shall send any accused to his death.' *Chambers* v. *Florida,* 309 U. S. 227, 241.''

The First Department of the Appellate Division similarly indicated its condemnation of this use of television in a recent decision in *People* v. *Martin* (19 A D 2d 804) when it ordered a change of venue from New York County. The prejudicial nature of the telecast in that case, so far as its effect upon the issue of fair trial, would certainly be less than in the instant case for it was exhibited over one of many stations in the largest city in the United States and the only participants there were the police and reporters. The court wrote: '' While the exact figure of the number of people who saw the telecast is in doubt, there can be no doubt that it was a very large number and that the potential for influence on possible talesmen is significant. The effect of the telecast cannot but be prejudicial.''

Notwithstanding the weakness of defendant's application in its failure to be buttressed by supporting affidavits of members of the community, we are constrained to hold that upon the precise facts in the record before us a change of trial should be had.

WILLIAMS, P. J., BASTOW, GOLDMAN, NOONAN and DEL VECCHIO, JJ., concur.

Motion for a change of venue granted and trial of indictment removed from County Court, Monroe County, to Supreme Court, Chautauqua County.