## T. EUGENE THOMPSON v. STATE.

183 N. W. (2d) 771.

February 5, 1971—No. 42264.

*T. Eugene Thompson*, pro se, for appellant.

*Douglas M. Head*, Attorney General, *William B. Randall*, County Attorney, and *Thomas M. Quayle*, Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

Appellant was convicted of first-degree murder in connection with the death of his wife. Prior to trial, on motion of appellant we issued our preemptory writ of mandamus requiring a change of venue from Ramsey to Hennepin County as a result of prejudicial pretrial publicity. State v. Thompson, 266 Minn. 385, 123 N. W. (2d) 378. After a lengthy trial in Hennepin County, appel-

lant was found guilty by a jury. We affirmed the conviction after examination of a lengthy transcript of the evidence. State v. Thompson, 273 Minn. 1, 139 N. W. (2d) 490. The United States Supreme Court denied certiorari. 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. (2d) 56. Appellant then sought relief by petition for writ of habeas corpus in the Federal district court, which was denied for the reason that he had not exhausted his state court remedies. Thompson v. Tahash (D. Minn.) 286 F. Supp. 663.

Subsequent to our original decision, the legislature of this state adopted a comprehensive postconviction statute, L. 1967, c. 336, now codified as Minn. St. c. 590. After denial of relief by the Federal court, appellant commenced the present proceeding for postconviction relief under our statute in the District Court of Hennepin County. A lengthy evidentiary hearing was held, after which the trial court denied relief. The case is now here on appeal from such denial.

We have examined a voluminous record of that hearing. Many of the claims now presented are the same or substantially the same as those raised on the original appeal. We are asked to review them in the light of decisions rendered subsequent to our affirmance of appellant's conviction, particularly Sheppard v. Maxwell, 384 U. S. 333, 86 S. Ct. 1507, 16 L. ed. (2d) 600.

The facts of the case were exhaustively set forth in our former opinion and need not be repeated here. While appellant assigns numerous reasons why he should be granted a new trial or other relief, his contentions can be summarized in a few claims. Since most of them have already been reviewed in our former decisions, that decision should stand unless it is now wrong in the light of Sheppard and other opinions that have come down since our decision.

Principally, appellant claims that he was inadequately represented in that the counsel whom he had selected failed to make proper investigation of the facts even though supplied with money to do so; that his counsel failed to move for a further change of venue or a mistrial following the assassination of

President Kennedy, which occurred during the trial; and that his counsel and the state refused to turn their files over to appellant or permit discovery of investigations made by the state and by appellant's counsel.

At the outset, it must be remembered that appellant, prior to his conviction, was a practicing attorney with considerable prominence in the field of criminal law. It is safe to say that he was personally acquainted with every lawyer in the state who was proficient in this field and that he selected those lawyers he considered best qualified to represent him.

With respect to his claim that his counsel should have requested or the court should have ordered, sua sponte, another change of venue, about all that need be said is that it is doubtful that appellant could have obtained a more fair trial anywhere else in the state than he had in Hennepin County. In a case of such notoriety, publicity extends throughout the state. It should be noted that in the trial of the case of Norman Mastrian, the alleged go-between in this bizarre affair, the venue of the trial was changed to Duluth; but nonetheless Mastrian, like appellant, was convicted of first-degree murder. State v. Mastrian, 285 Minn. 51, 171 N. W. (2d) 695, certiorari denied, 397 U. S. 1049, 90 S. Ct. 1381, 25 L. ed. (2d) 662. Furthermore, the trial court found in this proceeding, and the record supports the finding, that no request was made by appellant or his counsel for another change of venue. Even though, as we stated in State v. Thompson, 266 Minn. 385, 123 N. W. (2d) 378, a defendant does not ordinarily have the right to select the county where he is to be tried when a change of venue is granted, in this case we did grant him the right to select the county where he thought he would have the best chance for a fair trial. It is doubtful that more could have been accomplished by another change of venue since the publicity of which he complains extended throughout the state.

With respect to appellant's claim that his counsel failed to properly investigate the facts that would have helped him, about

all that need be said is that the trial court has found against him in this proceeding. Appellant was, as we pointed out above, a qualified lawyer in his own right and it is hard to believe he would not have insisted upon proper investigation had he thought it would produce evidence that would help him.

Failure to permit discovery of witnesses' statements which were in the possession of the state is adequately discussed in our opinion in State v. Mastrian, 285 Minn. 51, 63, 171 N. W. (2d) 695, 703.

We think the most serious claims now presented by appellant are those relating to the prejudicial publicity prior to trial. This case can be distinguished from Sheppard in that there the prejudicial publicity, which continued during the trial, had a direct effect on the proceedings, leading the Supreme Court to observe, among other things (384 U. S. 358, 86 S. Ct. 1520, 16 L. ed. [2d] 618):

"The carnival atmosphere at trial could easily have been avoided since the courtroom and courthouse premises are subject to the control of the court. As we stressed in Estes [Estes v. Texas, 381 U. S. 532, 85 S. Ct. 1628, 14 L. ed. (2d) 543], the presence of the press at judicial proceedings must be limited when it is apparent that the accused might otherwise be prejudiced or disadvantaged. Bearing in mind the massive pretrial publicity, the judge should have adopted stricter rules governing the use of the courtroom by newsmen, as Sheppard's counsel requested."

While the trial court did not have the benefit of Sheppard at the time this case was tried, the case was conducted by an able, highly respected judge who had many years of experience. Everything possible was done to keep prejudicial publicity during the trial at a minimum. Although the news media's lack of restraint preceding the trial left much to be desired, as we noted in State v. Thompson, 266 Minn. 385, 388, 123 N. W. (2d) 378, 381, we do not believe the publicity current during the trial of

the case prevented a fair consideration of the evidence by the jury.

Nor are we unmindful that the treatment accorded witnesses after the trial lends support to appellant's claim that the testimony of these witnesses was colored by promises of leniency made to them by the state with respect to their own difficulties with the law. But when the whole record is examined in detail, there are too many pieces that fit together to lead us to any other conclusions than that the record does support the conviction and that appellant received as fair a trial as he could have obtained anywhere in this state in a case of such notoriety.

State v. Mastrian, *supra,* was decided subsequent to Sheppard. What we said there with respect to publicity prior to and during the trial and the necessity of sequestering the jury is equally applicable here. See, 285 Minn. 69, 171 N. W. (2d) 706.

After an examination of this entire record and the record on the former appeal, we are convinced that the trial court correctly denied appellant postconviction relief.

Affirmed.

MR. JUSTICE KELLY took no part in the consideration or decision of this case.