## CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Commonwealth of Virginia

v.

Gerald L. Lavenstein, Jr.

February 13, 1976

Case No. 3601

By JUDGE PHILIP L. RUSSO

This case is before the court at this time on motion of defendant by counsel for a change of venue from the City of Virginia Beach to some other jurisdiction on the ground that the publicity which this case has received and is continuing to receive has made it impossible for him to receive a fair and impartial trial in this jurisdiction.

### Statement of Facts

Warrants were obtained against the defendant on March 7, 1975, for certain alleged drug violations. The cases were continued six times in the General District Court. The first continuance was due to the fact that on the original trial date, March 10, 1975, the drug analyses had not been returned to the court by the drug chemist. They were, thereafter, continued five times on motion of counsel for the defendant, which motions were not opposed by the prosecution. On September 19, 1975, the defendant executed a waiver of preliminary hearing, and on October 6, 1975, three indictments were returned against the accused for the following alleged offenses:

(1) Possession of Marijuana
(2) Possession of Cocaine
(3) Possession of Hashish

On December 10, 1975, the matter came before this court for the first time. On that occasion, counsel for the defendant made a motion for a continuance on the ground that they wanted to have the accused examined by a psychiatrist. Norris Halpern, who had just been appointed as co-counsel for the defendant, said that he had had opportunities to see the defendant on several recent occasions and that it was his earnest belief that he needed psychiatric help. The Deputy Commonwealth's Attorney for the City of Virginia Beach opposed the continuance, but Mr. Halpern cited a recent Fourth Circuit Court of Appeals case which was not denied nor distinguished by the said Deputy Commonwealth's Attorney, so the Court reluctantly granted the continuance and ordered all counsel to agree on another trial date before leaving the courtroom. They agreed on February 19, 1976.

The next morning, on the front page of the second section of the *Virginian-Pilot*, the following article appeared. The headlines were entitled "Mockery of Justice Claimed in Delay." It then went on as follows: " 'This case makes a mockery out of justice,' fumed Deputy Commonwealth's Attorney Paul A. Sciortino Wednesday morning after a judge granted a delay in the nine-month old drug case of Gerald L. Lavenstein, Jr. 'There's something to the charge that poor people get a different brand of justice than others,' Sciortino said outside court. 'After this Lavenstein case, I don't see how I can look any kid in the eye whom I've sent to the pen on drug charges'." The article stated that "Sciortino contended that the defense has received six continuances in the lower court on the same charges. 'Just how long will the court go along with this?' Sciortino asked."

The Deputy Commonwealth's Attorney failed to say that all of the continuances in the lower court were granted without objections by him or any member of his office. This fact was brought out in a later hearing before this court. Other aspects of the December 11, 1975, article will be discussed later in this opinion.

Thereafter, numerous articles, editorials and letters to the editor appeared in the *Virginian-Pilot*, the local morning newspaper, and in the *Ledger-Star*, the local evening paper. These, also, will be discussed later in this opinion. As a result of this publicity, counsel for the defendant have filed a "Motion For Change Of Venue." The Court has conducted two hearings in regard to the motion and has taken the matter under advisement.

### Conclusions of Law

There is an excellent treatise of the subject "Change of Venue" in 33 A.L.R. 3d 17. It goes into the matter in great detail and cites cases both "pro" and "con." A careful reading of this treatise as well as other research leads to two certain conclusions.

(1) Every defendant in a criminal case has the right to a fair trial by an impartial jury.

(2) The propriety of granting or refusing an application for change of venue on the ground of local prejudice created by newspaper articles under the circumstances of each case is left to the discretion of the trial court.

With these two definite propositions in mind, let us then explore some of the newspaper articles, editorials, and letters to the editor which have appeared in the local press.

Statements in the article of December 11, 1975, which generated this controversy have been previously referred to. The article also said that the defendant has never been imprisoned despite four drug convictions, and that his late father had real estate interests valued at fifty million dollars a few years before his death in 1972. It further stated that, "If convicted on the latest series of drug charges, Lavenstein faces revocation of the ten-year suspended sentence in addition to any punishment on the three indictment charges and last weekend's offenses."

The article reported that in 1973, the defendant was charged in Richmond with the drug-related murder of a clothier in the businessman's store and that the charge was dropped for lack of evidence after key witnesses disappeared. The article did say that, "The prosecution admitted, however, that it could not link this disappearance with any threat from Lavenstein."

On January 21, 1976, an article appeared on the front page of the first section of the *Virginian-Pilot*. The Deputy Commonwealth's attorney was quoted as saying, "All I may have taken was a cheap shot at the criminal justice system. And in this case, the system's been pretty crummy and deserved the criticism."

"The remarks were made out of frustration because this guy Lavenstein had been around a long time and he's never spent substantial time in the local jail, much less a day in prison."

"I represent the public in court and it's not my job to bow down in front of judges."

In the same article, the Commonwealth's Attorney for the City of Virginia Beach said that he supports Sciortino's stand in the case, noting that "Paul was expressing his concern about continuances, which are always a problem with this office. And it was a rather aggravated situation in this case."

The same article stated that the charges had been continued six times in lower court, all on defense motions, and that the defendant had been arrested on new drug charges just the weekend before his December court appearance. The newspaper account then said, "Evans finally scrapped the letter idea and the consensus in the prosecutor's office was that the judges' charges were insubstantial and that it was time the judges started feeling the heat for their actions."

On January 22, 1976, an editorial appeared in the *Virginian-Pilot* entitled "Prosecution v. Judiciary." It referred to the court granting a delay in the nine-month old drug case against "a well-heeled young man." It stated that, "The drug defendant whom Mr. Sciortino was trying to send to prison has a long record of arrests but not of confinement" and that he was before Judge Russo for the first time but "the charges against him had been continued on six occasions, always at the request of defense counsel in lower court, and the delay motion that Judge Russo accepted was based on a last minute call for a psychiatric examination. Clearly, the defense did not wish to press its right to a speedy and public trial."

On January 24, 1976, another front page article appeared in the *Virginian-Pilot*. It stated that, "The prosecutor explained this week that he was frustrated

at the crummy handling of the case in the criminal justice system. He said that Lavenstein, the son of a late millionaire, had been arrested on new drug charges just the weekend before the December court appearance, which spawned the controversy between the bench and the prosecutor."

" 'Moreover,' said Sciortino, 'Lavenstein is on probation from four prior drug convictions. But this guy Lavenstein has never spent substantial time in the local jail, much less a day in prison'." This article further stated, "The case had been continued six times in General District Court on the defense's motion." It reiterated Sciortino's statement, " 'I represent the public in court and it's not my job to bow down in front of judges'." It went on, "Lavenstein, son of the late Gerald L. Lavenstein, Sr., who was a wealthy businessman and sportsman in Virginia Beach, was placed on ten years' probation in 1972 for drug sales on conditions that he complete a drug rehabilitation program in Richmond."

"While attending the program, he was charged with murder in the drug-related killing of a Richmond businessman. The prosecution later dropped the case when its witnesses disappeared before Lavenstein's preliminary hearing in December, 1973."

On January 25, 1976, another editorial appeared in the *Virginian-Pilot*. It stated that the court "had granted a delay in a nine-month old drug case against a well-heeled defendant whose attorney had won six continuances in lower court." It then said, "There's something to the charge that poor people get a different brand of justice than others."

"Poor people without access to the more experienced and more expensive defense attorneys indeed are disadvantaged in attempts to escape prison or postpone going there." The editorial then went on to say that the "quarrel was not as much with Judge Russo who had just received the dope case and had little choice but to grant the motion for delay as with the defense's successful maneuverings for the better part of a year and the suspect's penchant for getting into and out of very serious trouble."

On January 29, 1976, another editorial appeared in the *Virginian-Pilot*. The main thrust of the article was the "soft" sentence given by Judge Walter Hoffman to a certain Thomas Dail, but it said as follows: "This

incident tends to verify what Deputy Commonwealth's Attorney, Paul A. Sciortino, said last month in protesting the seventh delay in State courts of drug charges against a well-financed suspect that 'there's something to the charge that poor people get a different kind of justice than others.'"

Throughout the entire time, there were periodic letters to the editor. One said, "Indeed it seems if a person has enough money, he needn't be concerned with serving time for crime." Still another said, among other things, "Mr. Sciortino only voiced what the majority of law-abiding citizens think: That there is no equal justice. That there is a rich man's justice and a poor man's justice." Another letter to the editor said, "I applaud Deputy Commonwealth's Attorney Paul Sciortino for voicing the honest opinion that the public has shared for a long time. Indeed, it seems if a person has enough money, he needn't be concerned with serving time for crime." "When the average citizen or small businessman is suspected of ill-doing, he is immediately placed in the limelight and made to pay for his mistakes."

There are other articles and letters to the editor which appeared in the paper, all very recently, but the above-enumerated ones suffice to show their general nature. During the second hearing on the motion for a change of venue on February 6, 1976, the court made a comment to the effect that one of the things that gave it concern was the fact that these articles and editorials contained so many things that will not be admissible at the trial. Research of the law fortifies this concern.

The case of *Williams v. State*, 162 Tex. Crim. 202, 283 S.W.2d 239, cited in 33 A.L.R. 3d 17, page 52, is an example of a case where a conviction was reversed because of the trial court's failure to grant defendant's motion for a change of venue. The court emphasized that the nature of the news accounts would have to be specifically noted since those who had read them had learned facts which, since the defendant did not testify in his own behalf, were not admissible at trial. The court concluded that wile none of the facts contained in the newspaper accounts were admissible in the trial, yet at least five members of the jury had read such accounts prior to going into the jury box to try the defendant, and that however guilty

he might be, he was entitled to a trial by a jury who entered the jury box with an open mind.

In the case at bar, the Commonwealth has secured 154 affidavits to the effect that these affiants could give the defendant, Lavenstein, a fair and impartial trial. All of the affidavits are worded exactly the same, and nowhere can it be found that any of the affiants have said that they have or have not read the newspaper articles complained of. Indeed in 33 A.L.R. 3d 17, at page 76, the case of *State v. Meyer*, 181 Iowa 440, 164 N.W. 794 is cited. In this case, the court held that a change of venue was warranted. The court said, "The fact that the state obtained almost 500 signatures of persons in opposition to the motion for a change of venue tended to support, rather than contradict, defendant's claim of prejudice."

The defense has secured twenty-seven affidavits, all of which are also identically worded to the effect that the affiants have read an followed the recent publicity attendant to the motion for a continuance and related articles involving Gerald Leslie Lavenstein, Jr., and that having been exposed to the publicity, they would not be in a position to render a fair and impartial judgment since the articles have led them to believe that the defendant has in fact received preferential treatment.

During the first hearing on the motion for a change of venue on February 3, 1976, it was brought to light for the first time that the Commonwealth's Attorney's Office had not objected to any of the continuances in the General District Court. Nevertheless, the public has been led to believe, from the published statements of the Deputy Commonwealth's Attorney, that these continuances were strenuously objected to by the Commonwealth even though he either knew, or should have known, that this was not a true fact; and understandably, the impression thus created of favored treatment of the rich aroused a considerable public outrage and response.

Compounding this impression, the Commonwealth's Attorney stated to the press in an article appearing in the *Virginian-Pilot* on January 21, 1976, that he supported the stand of his Deputy saying that continuances are always a problem with his office and "it was a rather aggravated situation in this case." The use of the phrase "aggravated situation" would seem to reinforce the public impression

of favored treatment and would seem clearly inconsistent with the fact that the Commonwealth had opposed none of the District Court continuances, a fact which the Commonwealth's Attorney either then knew or should have known.

The court has dealt at some length with the origin of the publicity forming the basis for the defendant's motion for a change of venue because it is essential to do so. Quoting from the authority found in 33 A.L.R.3d 17 at page 72:

> It has been explicitly stated that a court which has been called upon to determine whether pre-trial publicity in a criminal case has been such as to jeopardize a defendant's right to a fair and impartial trial, thus necessitating a change of venue, may properly consider the connection of the police or prosecution with the release of the publicity complained of.

Indeed, the legal profession itself, feels very strongly about statements made by lawyers in connection with criminal cases prior to their final disposition. In 33 A.L.R.3d 17, at page 35, footnote 11, there is set forth Disciplinary Rule 7-107(B) to Canon 7 of the 1970 Code of Professional Responsibility. The pertinent parts are as follows:

> A lawyer or law firm associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extra-judicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:
> (1) The character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused . . . .
> (6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.

The case of *People v. Luedecke*, 22 App. Div. 2d, 636, 258 N.Y.S.2d 115, holds that where the pre-trial publicity was found to be such as to require that the defendant, indicted for murder, be granted a change of venue, the active participation by not only the law enforcement officers but also the district attorney in the release of the publicity, had the effect of poisoning the fountain of justice before it began to flow.

The Supreme Court of Virginia has frequently recognized the responsibility of prosecuting attorneys to insure that the accused is afforded a fair and impartial trial. In the case of *McLane v. Commonwealth*, 202 Va. 197, 116 S.E.2d 274 (1960), the court said:

> We have repeatedly held that attorneys for the Commonwealth are not only under the duty to prosecute one charged with crime but also under the duty to see that the accused gets a fair and impartial trial. Nothing should be done or permitted to prejudice the case of an accused, or obscure the minds of the jurors on the question of whether or not he is guilty of the offense charged.

The case of *Foster v. Commonwealth*, 209 Va. 297 (1968), quotes from the case of *Sheppard v. Maxwell*, 384 U.S. 333 (1966), decided by the Supreme Court of the United States as follows:

> Where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.

In the case of *State v. Thompson*, 266 Minn. 385, 123 N.W.2d 378, it was noted that courts could do little to restrain news media from printing or broadcasting what they claimed was news, but that when it appeared that the public had been subjected to so much publicity about a case that it seemed unlikely that a fair trial could be had in the locality in which the trial normally

would be held, the court could and should see to it that the trial is transferred to another locality in which it is more probable that a fair trial could be had.

This court is of the opinion that there has been prejudicial news and that there is a reasonable likelihood that such publicity will prevent a fair trial and that "the fountain of justice has been poisoned before it began to flow."

It is unfortunate that as the result of such prejudicial pre-trial publicity, there will be a further delay in this case. However, in the case of *Muscoe v. Commonwealth*, 87 Va. 460 (1891), it is stated that "no arguments of inconvenience or delay should be permitted to stand in the way of the great end to be obtained -- a fair and impartial trial."

This court is of the opinion that the motion for a change of venue should be granted.