**STATE of Minnesota, Respondent,**

v.

**Jeffrey Phillip SALAS, Appellant.**

**No. 51163.**

Supreme Court of Minnesota.

June 19, 1981.

C. Paul Jones, Public Defender, and Robert D. Goodell, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

YETKA, Justice.

Defendant was indicted by a grand jury for first-degree and second-degree murder. Before trial, defendant moved the Ramsey County District Court for a change of venue because of prejudicial pretrial publicity. The district court denied the motion and defendant sought a writ of mandamus from this court ordering a change of venue. We denied the writ on October 29, 1979.

After the jury was selected, defendant again moved for a change of venue, and the motion was again denied. The jury convicted defendant of second-degree murder, and he appeals that conviction. We affirm.

Defendant admitted that he shot and killed Victor Mercado in St. Paul on July 2, 1979. Victor Mercado's death appeared to be a by-product of a feud between two factions of St. Paul's Latin-American community. Mercado was a member of one faction and defendant was a member of the other.

In April of 1979, a man named Rudy Saucedo was killed in St. Paul. Jose Coban, one of Victor Mercado's friends, testified that defendant approached him on April 22 and told him to convey a message to Victor Mercado. That message was that Mercado should stop trying to implicate defendant in the Saucedo killing or defendant would kill Mercado. Coban's exact words were as follows:

Q. [By the prosecutor] And when [defendant] called you over to the side, what happened?

A. He had told me that if I was Victor's friend I would tell him to stop trying to—to tell him to stop trying to get him involved in that case about Rudy Saucedo, that he had killed him. And if he didn't, he would kill him.

Q. If he didn't, he would kill who?

A. Victor Mercado. And then I told him: if he did, he would pay for it.

Defendant testified that he was not present when these statements were alleged to have been made, and two other witnesses corroborated his claim that he was somewhere else.

On April 28, defendant was attending a party at William Booker's residence in St. Paul. Victor Mercado was also at that party. When some of the guests started fighting, Booker enlisted defendant's help to get them to leave. As defendant was helping clear people out of Booker's residence, an argument erupted between defendant and Mercado. At some point during the argument, Mercado pulled out a knife. No fight occurred, but two witnesses testified that they heard defendant threaten to kill Victor Mercado.

During the afternoon of April 30, defendant stopped his motorcycle in front of Mercado's apartment. Someone had vandalized defendant's brother's van on the preceding day so defendant told Mercado and his friends that they had better watch their windows. Mercado's girl friend testified that defendant produced a gun when he made this threat, but defendant stated that a blackjack was the only weapon he had produced.

In early May, defendant and some of his friends were playing basketball. As they left the basketball court, one of Mercado's friends pulled up in his car, showed them his gun, and warned them that if anything happened to his family, they would be the first to go. Mercado's friend confirmed this testimony although he denied that he had produced a gun.

On May 16, Victor Mercado approached defendant's sisters while they were playing softball. Mercado complained that somebody was threatening his family. He pulled out a gun and fired several shots into the air, but nobody was hurt.

Two days later, on May 18, defendant was attending a wedding reception where some of Victor Mercado's friends were also present. According to Mercado's friends, defendant approached them and twice told them that he was going to kill Victor Mercado. Mercado's friends also testified that a gun was visible in defendant's belt, but defendant denied having a gun at that time.

On May 26, defendant and some of his friends went to a party in St. Paul. When they arrived, Victor Mercado and some of his friends were already present. Two of defendant's friends testified that one of Mercado's friends produced a gun and ordered them inside the house. This incident ended when the police arrived, but no gun was found when the police searched Mercado's friend.

The next day, May 27, defendant and his friends were watching a softball game on Harriet Island. A carload of Mercado's friends pulled up near them. There was an exchange of gunfire between the two vehicles, and one of defendant's friends was wounded. As a result of this incident, one of Mercado's friends and one of defendant's friends were convicted of aggravated assault. Defendant testified that he purchased a gun shortly after this incident.

Defendant was attending a community arts festival on July 2 when he met Victor Mercado. According to defendant, he spoke with Mercado to see if they could agree to end the feud. They walked outside of the building where they had met and went to a nearby parking lot. Their conversation continued, and defendant said that Mercado and his friends would end up in jail if the fighting did not stop. Mercado stated that the police were trying to enlist his help to put defendant in jail. They started arguing and, according to defendant, Mercado reached into his shirt as if to pull out a gun. Defendant then pulled out his gun and shot Mercado in the face. Defendant's gun jammed so he took a moment to unjam it and then fired a second shot into the back of Mercado's head. Mercado was lying with his face on the ground after the first shot. Defendant next started kicking Mercado, then he picked up a board and beat Mercado with it. No gun was ever found on Victor Mercado's body nor did defendant testify that he actually saw one. The following morning, Victor Mercado died in the hospital.

The issues raised by this appeal are:

1. Did the trial court abuse its discretion when it failed to grant defendant's motion for a change of venue on grounds of prejudicial pretrial publicity?

2. Did the trial court improperly admit evidence of a prior crime for which defendant was not on trial?

3. Does the evidence establish that defendant was guilty of first-degree manslaughter instead of second-degree murder?

1. After the jury was selected in this case, defendant renewed his motion for a change of venue, claiming that pretrial publicity would prevent him from receiving a fair trial in Ramsey County. The district court denied the motion and defendant now raises this issue on appeal.

The rules of criminal procedure set forth the following standard for a change of venue:

> A motion for continuance or change of venue shall be granted whenever it is determined that the dissemination of potentially prejudicial material creates a reasonable likelihood that in the absence of such relief, a fair trial cannot be had. A showing of actual prejudice shall not be required.

Minn.R.Crim.P. 25.02(3).

■ Whether a change of venue should be granted for reasons of pretrial publicity is a matter over which the trial court has wide discretion. *See, e. g., State v. Thompson,* 266 Minn. 385, 387, 123 N.W.2d 378, 380 (1963) (per curiam). This court has stated that it will not reverse a trial court's determination "unless there has been a clear abuse of discretion." *State v. Gilbert,* 268 N.W.2d 576, 581 (Minn.1978). "Before it can be concluded that the trial court has abused this discretion, it must be shown that a real possibility exists that the jury will not render an unprejudiced or unbiased verdict." *State v. Hogan,* 297 Minn. 430, 437, 212 N.W.2d 664, 669 (1973).

Defendant argues that the pretrial publicity in this case was sufficiently prejudicial to show an abuse of the trial court's discretion. Defendant claims that the publicity was substantial, that the victim of the homicide was portrayed in a favorable light, and that many newspaper articles stated the Mercado killing and the earlier killing of Rudy Saucedo were connected, all of which prejudiced defendant's right to a fair trial.

The state points out, however, that the publicity did not refer to defendant in any prejudicial manner. The newspaper reports did not contain damaging opinions of public officials who directly implicated defendant. *Cf. State v. Thompson,* 266 Minn. at 388–89, 123 N.W.2d at 381 (news reports quoted police officials as saying, *inter alia,* that defendant could have been arrested weeks earlier, but police chose to wait until case was sufficiently concrete to foreclose possibility of acquittal; supreme court ordered change of venue).

■ Also, the news reports pertaining to the Mercado homicide were essentially factual in nature. *Cf. State v. Swain,* 269 N.W.2d 707, 720 (Minn.1978) (news reports were factual; trial court properly denied change of venue); *State v. Annis,* 291 Minn. 552, 553, 192 N.W.2d 419, 420 (1971) (per curiam) (same). Factual news reports are insufficient to establish that pretrial publicity was prejudicial. Opinions or implications of the defendant's guilt are required, and these are absent from the news reports involved in this case. *See State v. Thompson,* 266 Minn. at 388–89, 123 N.W.2d at 381; *cf. State v. Hogan,* 297 Minn. at 436–37, 212 N.W.2d at 669 ("The news media coverage of the bombings [of Dayton's in downtown St. Paul] consisted only of factual articles relating to the incident itself or the pretrial procedure in the prosecution of defendant. The newspaper publicity did not express opinions or refer to evidence of defendant's guilt nor attribute such statements to responsible public authorities."); *State v. Lupino,* 268 Minn. 344, 352, 129 N.W.2d 294, 300 (1964) ("It is not claimed in this case, however, that the extraordinary publicity given the trial included dissemination of pretrial opinions of responsible public authorities intimating the guilt of the defendant as in the Thompson case."), *cert.*

*denied,* 379 U.S. 978, 85 S.Ct. 681, 13 L.Ed.2d 569 (1965).

■ Defendant also claims the fact that many prospective jurors were aware of the news reports demonstrates the prejudicial effect of the pretrial publicity. The state correctly argues, however, that prejudice among some voir dire examinees, or exposure of some jurors to news reports before trial, does not mean that the jury was biased. *See Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Mastrian v. McManus,* 554 F.2d 813, 818 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977); *State v. Thompson,* 273 Minn. 1, 35, 139 N.W.2d 490, 514, *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

■ Although the death of Victor Mercado generated considerable publicity, the publicity is not the type that has been characterized as prejudicial in other decisions. It did not affect the minds of the specific jurors involved in this case. Because defendant has not shown a real possibility that the news reports interfered with an unprejudiced or unbiased verdict, we cannot conclude that the district court abused its discretion when denying defendant's motion for a change of venue.

■ 2. A portion of Jose Coban's testimony is quoted at the beginning of this opinion. Defendant argues that this is evidence of another crime—that defendant killed Rudy Saucedo—and was admitted into evidence without proper adherence to the Spreigl rule.

This testimony was properly admitted, however, even though the Spreigl procedure was not followed. First, the statement itself was neutral. It did not tend to prove that defendant committed a previous crime; it only tended to show defendant's motive for killing Victor Mercado because defendant thought Mercado was accusing him of having committed a prior crime. The trial judge took this view at trial when defendant moved for a mistrial after this evidence had been admitted.

The testimony was also admissible because it pertained to the relationship between defendant and the victim, regardless of its reference to another crime. In *State v. Boyce,* 284 Minn. 242, 170 N.W.2d 104 (1969), a manslaughter case, witnesses testified that the defendant had assaulted the victim 1 year before the killing. This court ruled that the state was not required to follow the Spreigl rule, stating "[w]e did not intend by our decision in *State v. Spreigl* [272 Minn. 488, 139 N.W.2d 841] . . . to require a 'Spreigl notice' as a condition to the admissibility of evidence bearing directly on the history of the relationship existing between one accused of murder and the victim." *Id.* at 260, 170 N.W.2d at 115. We also stated that the Spreigl procedure was inapplicable in *State v. Diamond,* 308 Minn. 444, 241 N.W.2d 95 (1976) (per curiam). In that case, a witness testified that the defendant had assaulted the victim 1 year before he was killed. According to the court, the evidence "was offered and admitted here not to prove defendant's bad character but to help illuminate defendant's relationship with the decedent." *Id.* at 448, 241 N.W.2d at 99. Unlike *Boyce* and *Diamond,* Jose Coban's testimony in this case did not even go so far as to state that defendant had committed a previous crime. He only stated that defendant thought Mercado was accusing him of the prior crime. As a result, the state was not obligated to adhere to the Spreigl procedure before using the testimony in this case.

Finally, Jose Coban's testimony was admissible to show motive without regard to the Spreigl requirements. In *State v. Martin,* 293 Minn. 116, 197 N.W.2d 219 (1972), the defendant appealed his first-degree murder conviction, and one of the issues on appeal concerned the admissibility of testimony relating to other crimes. One witness specifically stated that defendant told her he killed the victim because the victim had threatened to reveal his prior criminal activity to the police. *See* 293 Minn. at 126, 197 N.W.2d at 226. The court stated:

We think the rule to be applied in this case is that, in a criminal prosecution, evidence that other criminal acts have

been committed by the accused may be admissible to show his motive for the commission of the offense charged, notwithstanding such evidence proves or tends to prove an offense other than that charged. *Where the motive for the crime charged is concealment of some other crime, either by destroying the evidence of such other crime or killing a witness who would testify thereto, the evidence of such motive is admissible, even though it tends to show the commission of an extraneous crime.* 29 Am.Jur.2d, Evidence, § 325. Here, the record is replete with evidence of the fact that decedent was aware of defendant's criminal activities; that she had threatened to report them; and that defendant, on more than one occasion, had expressed his intention to kill her so as to remove the possibility that she might report his crimes.

. . . .

Nor are we satisfied that there was prejudicial error by the failure of the state to provide the defense with a so-called Spreigl notice. . . . We observed in State v. Boyce, 284 Minn. 242, 170 N.W.2d 104 (1969), that the Spreigl decision was not intended to apply with respect to evidence offered in a homicide prosecution bearing directly upon the history of the relationship existing between one accused of murder and the victim. Here, there was no evidence by which it was attempted to establish that defendant had in fact committed other crimes. The evidence relating to other crimes of defendant was necessarily, but incidentally, a part of the substantive proof of the offense since defendant's fear that decedent would disclose such crimes to the police was his expressed reason for the murder.

*Id.* at 128–29, 197 N.W.2d at 226–27 (emphasis added); *see* 6 Wm. Mitchell L.Rev. 455, 455 & n. 2 (1980).

Jose Coban's testimony that defendant said he would kill Mercado if Mercado further implicated defendant in the Saucedo killing clearly falls within this motive exception. Thus, under *Martin* the testimony was admissible without regard to the Spreigl requirement.

3. Defendant claims that the evidence in this case cannot support a second-degree murder conviction. Instead, defendant argues, the evidence shows provocation and that the homicide was committed during the heat of passion sufficient to justify nothing more than a first-degree manslaughter conviction.

Minnesota's criminal code defines second-degree murder as follows:

Whoever causes the death of a human being with intent to effect the death of such person or another, but without premeditation, is guilty of murder in the second degree . . . .

Minn.Stat. § 609.19 (1980).

First-degree manslaughter is also defined as an intentional killing, but coupled with exonerating circumstances:

Whoever does any of the following is guilty of manslaughter in the first degree . . . :

(1) Intentionally causes the death of another person in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances . . .

*Id.* § 609.20(1).

The evidence in this case shows that defendant had been subjected to prior threats and assaults from Victor Mercado and his friends. On one occasion, Mercado even drew a knife when confronting defendant. Defendant argues that this evidence shows he reasonably feared for his life and that when Mercado reached into his shirt immediately before the shooting, defendant had very good reason to believe Mercado was about to produce a weapon and kill him. According to defendant, this sequence of events produced a heat of passion sufficient to provoke a person of ordinary self-control under like circumstances.

Although this argument has some appeal, we are required to view the evidence most favorable to the state when determining whether the jury reasonably could have found defendant guilty of the

offense charged. *See State v. Thompson,* 273 Minn. 1, 36, 139 N.W.2d 490, 515, *cert. denied,* 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

No weapon was found on the deceased and defendant did not testify that Mercado actually produced a weapon prior to the shooting. In view of this evidence, the jury was justified in concluding that a person of ordinary self-control would not have been provoked in these circumstances. The mere fact of prior threats from the deceased, and the fact that the deceased reached into his shirt shortly before the shooting, do not compel a verdict of manslaughter instead of second-degree murder. The provocation defense wanes even further in view of the evidence that defendant fired a second shot into Mercado's head, then started kicking him, and even after that, continued to beat his victim with a board.

The verdict is affirmed.