STATE of Minnesota, Respondent,

v.

Joseph R. GUSTAFSON, Appellant.

No. C1–86–537.

Court of Appeals of Minnesota.

Nov. 18, 1986.

Review Denied Jan. 16, 1987.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Paul R. Jennings, Asst. County Attys. Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Bradford W. Colbert, Asst. State Public Defender, Minneapolis, for appellant.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK FORSBERG, JJ.

## OPINION

FOLEY, Judge.

Appellant Joseph R. Gustafson was convicted of bribery, Minn.Stat. § 609.42, subd. 1(3) (1984) and conspiracy to commit perjury, Minn.Stat. § 609.175 and Minn. Stat. § 609.48, subd. 1(1), subd. 4(1) (1984) following an incident in which he was arrested for possession of cocaine. Appellant raises a number of issues including improper reference to his failure to testify at his cocaine possession trial, violation of attorney-client privilege, denial of his right to remove the trial judge, improper admission of *Spreigl* evidence and insufficient evidence. We affirm.

### FACTS

On October 2, 1984 appellant was on a motorcycle talking to someone in a parked car. After ignoring several requests by a police officer to move the motorcycle, which was obstructing traffic, appellant was given a citation. Appellant was placed in the rear of the squad car after failing to have identification and giving a false name; he was patted down pursuant to police department rules. The police officer felt a hard object inside appellant's leather jacket and pulled out a beeper. Two plastic bags were also seized from the jacket; one containing a white powdery substance, the other containing folded pieces of paper. Money totalling $1,330 was also taken from appellant. The bags were later tested and found to contain cocaine. Appellant was charged with possession of cocaine and was released from jail. Upon his release, he picked up a vest and gloves, part of the property taken the night of the arrest. The leather coat, beeper and money were held for evidence. Appellant never claimed that the leather coat or gloves were not his.

Appellant's cocaine possession trial was scheduled for March 12, 1985. In mid-February 1985, appellant called an acquaintance, Andrew Beggs, and offered to give him a car worth $200 to $300 if Beggs would tell appellant's lawyer, Joe Kaminsky, that Beggs owned the leather jacket. Appellant told Beggs that his brother had done something similar and had gotten away with it.

Appellant later told Beggs that if he were convicted he would go to jail. Appellant explained the circumstances surrounding his arrest and told Beggs to say that he had won the cocaine in a pool game. Appellant then drove Beggs to a street in north Minneapolis to show him the car he had promised, gave Beggs the keys and assured him that he would provide title to the vehicle "in time." Appellant further told Beggs that since Beggs had a clean record the most he would get was probation.

A few days later appellant drove Beggs to Kaminsky's office where Beggs told Kaminsky the jacket and cocaine were his. When Kaminsky asked Beggs where the jacket was, he responded that he had it for the past two weeks. Kaminsky then informed Beggs that the police still had the jacket.

Appellant told Beggs that another witness was needed to corroborate the story since Beggs had mistakenly claimed possession of the jacket. Appellant then asked Brian Guyant to claim that he had observed Beggs give appellant the jacket. Guyant agreed and met with Beggs to make their stories consistent. A few days

later, Beggs met with appellant, appellant's girlfriend and appellant's mother to discuss the story again. Beggs took notes at the meeting.

Beggs and Guyant went to Kaminsky's office on March 11, 1985. Minneapolis Police Officer Wayne Brademan and Hennepin County Attorney's Office Investigator Paul Stanton were also present at the meeting. Beggs was asked to identify the jacket but had difficulty locating the pocket in which the cocaine was found. Stanton testified that Beggs seemed nervous and confused. Beggs testified that Brademan and Stanton laughed when he could not find the inside pocket and he suspected that they did not believe his story that he had loaned appellant the jacket when appellant was about to test drive a motorcycle he had planned to purchase. Beggs was arrested. A search of his pockets produced a marijuana cigarette and two sheets of paper containing notes relating to the story he had just told.

After Beggs was in jail for three hours, he called Stanton and the next day said that he had lied about the cocaine and ownership of the jacket. Beggs explained that appellant had asked him to take the rap and gave a statement. The investigators then decided to set up a taped conversation between Beggs and appellant to determine who actually owned the cocaine. Beggs was released from jail and a "body bug" was placed on his back. Beggs was also given a phony complaint which stated that he was charged with possession of cocaine and possession of cocaine with intent to sell.

Beggs met appellant at a North Minneapolis home owned by Beggs' brother. Stanton and another police officer were in the basement during this meeting. In the tape recording, appellant makes numerous incriminating statements.[1]

During the conversation, appellant referred to the cocaine as "my stash." He did not disagree when Beggs referred to their fabricated story nor did he disagree when Beggs said that Kaminsky knew he was lying. Appellant did show concern over the crib sheets found in Beggs' pocket, however, and reassured Beggs that at most he would serve 30 days in the workhouse. Appellant disagreed with the description of the seized cocaine in the phony complaint being in a baggie and said it was in a zip lock bag and also said that he had "two white papers" and "three rocks." When Beggs asked for title to the car, appellant said that he forgot it. Subsequently, appellant's brother and Guyant brought the title card to Beggs who then turned it over to the investigators.

On April 18, 1985 a complaint was filed charging appellant with one count of conspiracy to commit perjury and one count of bribery. Both complaints (cocaine possession and conspiracy to commit perjury/bribery) were set for trial and were severed at appellant's request. At the first trial for cocaine possession, appellant did not testify. He was eventually acquitted.

At the second trial, appellant testified in his own defense, claiming that Beggs gave him the jacket and gloves to wear and denying ownership of the cocaine found in the jacket. Appellant stated that he did not tell anyone earlier that the jacket and cocaine belonged to Beggs because he was not a "snitch." He further testified that he sold the car to Beggs for $100 and that Beggs still owed him $50. Appellant was convicted of bribery and conspiracy to commit perjury and this appeal followed.

**ISSUES**

1. Did the prosecutor's reference to appellant's failure to testify at his earlier cocaine possession trial and his inquiry into conversations between appellant and his at-

---

1. The transcript of the conversation was made available to appellant's attorney and appellant attached it in the appendix to his brief. This transcript was not part of the record. This court did not consider the transcript in review-

ing this case but listened to the actual tape conversation which was part of the record. Respondent's motion to strike the transcript from appellant's brief is granted.

torney constitute prosecutorial misconduct that deprived appellant of a fair trial?

2. Did the trial judge's refusal to remove himself from the case constitute reversible error when appellant had previously exercised his right of removal in the prior cocaine possession trial?

3. Did the trial court erroneously admit evidence that appellant's brother had participated in a similar fabrication?

4. Was the evidence sufficient to sustain appellant's convictions?

## ANALYSIS

### I.

1. Appellant did not testify at his first trial for possession of cocaine. During cross-examination at the second trial, however, the prosecutor asked appellant whether he had testified and whether the tape recorded conversation was ever played at the first trial. Appellant objected and moved for a mistrial. Both were overruled.

■ The prosecutor may not comment on a defendant's exercise of the Fifth Amendment privilege not to testify. *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965); Minn.Stat § 611.11 (1984). In *Raffel v. United States*, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), the Supreme Court held that the defendant's silence at a prior trial was admissible for impeachment on the theory that defendant's silence itself constituted an admission as to the truth of the government agent's testimony against him. Although *Raffel* has not been overruled, its force in the federal courts has diminished. *See Doyle v. Ohio*, 426 U.S. 610, 632 n. 11, 96 S.Ct. 2240, 2251 n. 11, 49 L.Ed.2d 91 (1976) (Stevens, J., dissenting). In *Stewart v. United States*, 366 U.S. 1, 81 S.Ct. 941, 6 L.Ed.2d 84 (1961), for example, the Supreme Court held that cross-examination disclosing a defendant's failure to take the stand at two previous trials was

prejudicial error. In *Stewart*, the defendant had relied on the insanity defense and previous convictions for felony murder had been reversed twice. The court distinguished *Raffel* on the ground that in *Raffel* defendant's prior silence was significantly inconsistent with his testimony on direct examination. *Id.* at 5–7, 81 S.Ct. at 943–44.

■ We agree that appellant's prior refusal to testify at the first trial should not have been used to impeach his testimony at the second trial.[2] The prosecutor should not have commented on appellant's earlier silence. The error was not prejudicial, however. We may well have been persuaded to reverse in this case had the evidence of guilty not been so overwhelming. We further note that on redirect defense counsel established that appellant's decision not to testify at the first trial was based on advice of counsel. Thus, the possibility that the jury may have inferred guilt from appellant's decision not to testify at the previous trial was minimized. Finally, we think it noteworthy that this case, while related to the first trial, raised distinct and separate issues. Who actually owned the cocaine was essentially a collateral issue in the second trial. Viewing the record in its entirety, we are satisfied that the error was serious but not reversible error requiring a new trial. *United States v. Hasting*, 461 U.S. 499, 512, 103 S.Ct. 1974, 1282, 76 L.Ed.2d 96 (1983); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

■ 2. Appellant claims that the prosecutor violated the attorney-client privilege by asking him when he told his attorney that the jacket and cocaine belonged to Beggs. Inasmuch as appellant had already testified on direct testimony about the content of the conversations, this claim has been waived.

3. Appellant makes several other arguments relating to his claim that the prose-

---

**2.** In this case, we are not dealing with the question of the use of a defendant's *pre-arrest* silence as a basis for impeachment. *See Fletcher v. Wier*, 455 U.S. 603, 604 n. 1, 102 S.Ct. 1309, 1310 n. 1, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).

cutor committed misconduct by asking irrelevant questions, creating improper inferences and by improper commentary. We have reviewed these claims and find no merit to them.

## II.

Appellant was charged in two complaints with cocaine possession and conspiracy to commit perjury/bribery. The case was originally assigned to the Honorable Delilah F. Pierce. Appellant filed a notice demanding her removal pursuant to Minn. Stat. § 542.16 (1984). The motion was granted, and the two district court files were reassigned to the Honorable Peter J. Lindberg. At appellant's request, Judge Lindberg agreed to try the two complaints separately. The parties agreed to try the cases back-to-back, and a joint omnibus hearing was held.

After the omnibus hearing on November 21, 1985, the first trial began. It ended on Friday, November 22, 1985 with appellant's acquittal of cocaine possession. Appellant's second trial was scheduled for the following Monday. Just before jury selection on Monday, defense counsel orally requested that Judge Lindberg remove himself. The motion was denied.

■ Appellant now claims that the denial of his removal motion requires a new trial. We disagree. First, appellant had no right to remove Judge Lindberg having previously exercised his right of removal against Judge Pierce. The notice of removal at that time listed both complaints (cocaine possession and conspiracy to commit perjury/bribery) and the removal notice attached to both complaints. Moreover, the motion was untimely. Appellant knew on November 21, 1985 that Judge Lindberg would preside at his second trial scheduled immediately after the first trial. Appellant did not move for removal until just before jury selection on November 25, 1985. This was not timely. *See State v. Hoskins,* 292 Minn. 111, 120–21, 193 N.W.2d 802, 809–10 (1972).

## III.

Beggs testified that during his initial contact with appellant he was told that appellant's brother, Harold, had fabricated evidence in a similar situation and had not been caught. Appellant claims that this was improper *Spreigl* evidence, not sufficiently noticed. We disagree.

■ Reference to appellant's brother's wrongdoing does not trigger the *Spreigl* rules. This evidence was neutral with respect to appellant's involvement in the prior wrongdoing. *See State v. Salas,* 306 N.W.2d 832, 836 (Minn.1981). Appellant argues that because of the close familial relation, the jury may have speculated that appellant conspired with his brother in committing this prior act. We will not engage in this speculation; the statement did not tend to prove that the accused was involved in committing the prior act.

## IV.

■ We have reviewed the record and conclude that the evidence was sufficient for the jury to convict appellant of bribery and conspiracy to commit perjury. Beggs' testimony was amply corroborated by evidence that appellant gave Beggs a car, by the crib notes found on Beggs at his arrest and by appellant's statements during the taped conversation. *State v. Chan,* 393 N.W.2d 228 (Minn.Ct.App.1986) does not dictate a contrary result.

## DECISION

Appellant's convictions for bribery and conspiracy to commit perjury are affirmed.

Affirmed.