**STATE of Minnesota, Respondent,**

v.

**Paul M. LINDBERG, Appellant.**

No. C6-86-1974.

Court of Appeals of Minnesota.

June 16, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and STONE* and MULALLY, JJ.,* with oral argument waived.

## OPINION

STONE, Acting Judge.

Appellant Paul Lindberg was convicted of murder in the second degree, Minn.Stat. § 609.19(1) (1986). This appeal challenges the sufficiency of evidence, admission of *Spreigl* evidence, refusal to allow psychiatric testimony, trial court response to the jury's question and a 50% upward departure from the sentencing guidelines. We affirm.

## FACTS

At about 6:00 a.m. on May 13, 1986 an anonymous caller telephoned a Minneapolis television station and reported that he had witnessed the murder of a woman named "Shelly" and gave the location of her body. Police summoned to the scene found the body of a woman partially hidden beneath two trailers parked on the grounds of a parking lot. Portions of her body, including her hair, face, chest and stomach had been painted green. Wire ligatures were around her neck. The victim was later identified as Michelle Kunitz.

Investigation soon led police to appellant's apartment. They talked to appellant, age 21. In showing an investigator around, the investigator noticed green smudges on the kitchen and porch floors. Appellant was asked to accompany them to the police station.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Meanwhile, a search warrant was issued to search appellant's residence. As a result, bloodstained green carpeting, a bloodstained sweatshirt, pieces of wire matching those found on the body, a roll of bloodstained toilet paper similar to that found on the victim's neck, a bloodstained quilt, and a can of green spray paint were seized. A search of appellant's car resulted in the seizure of the bloodstained backseat.

At the police station appellant originally denied any involvement in the crime but then admitted he made the anonymous phone call. Appellant first gave a fictitious story about observing Kunitz's rape and strangulation in his apartment by three men but later confessed that he strangled Kunitz.

Appellant then gave a written statement recounting the events in more detail. In his statement, appellant said that about 10:00 p.m. that night his daughter stopped breathing and was taken to the hospital. He returned alone while his wife remained at the hospital. On the way home his car broke down and he shared a "joint" with a friend. Kunitz arrived at appellant's apartment at approximately 1:30 a.m. She asked about the baby and then made "passes" at him. According to appellant they had sex. Afterwards they had an argument.

Appellant stated that Kunitz told him that his daughter's health problems were his fault and then he hit her. After strangling her he panicked. He dragged the body into the kitchen and went to his car where he found Kunitz's lighter. He hid the lighter in her rectum and her keys in her vagina. Appellant said he spray painted her body so that it would look like a gang murder. He then redressed her and wrapped her in a quilt, tying the ends with pieces of telephone cord and extension cord. Appellant put the body in his car and drove to the parking lot.

Appellant was indicted for first degree murder. At trial the issue essentially was the degree of homicide committed. Appellant claimed he acted in the heat of passion and the offense, if any, was at most manslaughter in the first degree.

As part of the State's evidence a *Spreigl* incident was admitted. The State showed that appellant choked his wife in their apartment a few weeks before the murder of Kunitz.

Appellant testified at trial and recounted his history of prior physical and sexual abuse as a child. According to appellant he was forced to engage in sexual acts with his sister beginning when he was seven years old, was routinely beaten, and was forced to dress up as a girl and engage in anal sex with men.

Appellant also testified about the events leading to Kunitz's death. He related that Kunitz came to his home uninvited and she began recounting to appellant various unsettling incidents about appellant which his wife had told Kunitz. Kunitz was a "former" friend of appellant and his wife. According to appellant Kunitz mentioned that she and her boyfriend had recently broken up and she began to undress. Appellant stated she invited him to "join in" and he did so, out of guilt, but did not complete the sex act.

Appellant testified Kunitz then became angry and berated him. He said that she hit him and the argument escalated and became more violent, with Kunitz accusing him of causing his child's hospitalization, suggesting that he and his wife were incompatible and stating that appellant was unworthy of having a wife and child like the ones he had.

According to appellant, he began remembering how he was treated as a child and hit Kunitz. As his anger grew, he put his hands around her throat, as if he was choking his aunt (the primary sexual abuser in appellant's childhood according to appellant) rather than Kunitz. He testified he painted Kunitz's body as he had been painted with make-up when he was a child. He then recounted what he did with the body. Appellant stated he lied to the police about his car being stolen because he panicked and later lied to police in talking about this crime because he feared going to jail.

The jury was instructed on the offenses of first degree murder, second degree murder and first degree manslaughter. It convicted appellant of murder in the second degree and appellant was sentenced to 180 months, a 60–month upward departure from the presumptive 120–month sentence.

## ISSUES

1. Was the evidence sufficient to convict appellant of murder in the second degree?

2. Did the trial court abuse its discretion in admitting the *Spreigl* incident?

3. Did the trial court err in refusing to admit psychiatric testimony?

4. Did the trial court err in responding to the juror's question concerning heat of passion?

5. Did substantial and compelling circumstances justify a 50 percent upward departure?

## ANALYSIS

### I.

Appellant claims the evidence did not establish that he was guilty of murder in the second degree. Instead, appellant argues the evidence proved only that the homicide was committed in the heat of passion, justifying nothing more than a manslaughter in the first degree conviction. On review, we must view the evidence in the light most favorable to the verdict and assume the jury disbelieved any testimony conflicting with the result reached. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). Deference is given to jury verdicts and if the jury, giving due regard to the presumption of innocence and the State's burden of proving guilt beyond a reasonable doubt, could reasonably have found defendant guilty, the verdict will not be upset. *Id.*

Murder in the first degree involves premeditation and intent to effect death; murder in the second degree involves intent to effect death but not premeditation; manslaughter in the first degree is intentionally causing death in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances. The trial court appropriately charged the jury on each of these levels of homicide.

■ Based on appellant's prior statements, his testimony and the medical evidence, the jury could reasonably have concluded appellant acted with intent to kill when he strangled Kunitz. The jury was not required to conclude that the evidence showed appellant acted in the "heat of passion." Even if appellant's testimony concerning Kunitz's vilification was believed, the jury was not compelled to find it was sufficiently provoking such that he was only guilty of manslaughter in the first degree. *See State v. Salas*, 306 N.W.2d 832, 837–38 (Minn.1981).

### II.

■ At the omnibus hearing Robin Hughes, a friend of appellant's wife, testified that three to four weeks before Kunitz's death appellant called her and reported that he wasn't sure if he had choked his wife to death. Hughes went to their apartment and observed appellant's wife getting up off the floor with a blotchy face and bloodshot eyes. She told Hughes appellant had choked her. The trial court admitted this evidence as a relevant *Spreigl* incident bearing on intent or absence of mistake or accident.

Appellant's only contention on appeal with respect to this *Spreigl* incident is that its probative value is outweighed by its prejudicial effect. The trial court carefully considered this issue and we cannot say that the trial court abused its discretion in ruling to the contrary. *State v. Smith*, 367 N.W.2d 497, 505 (Minn.1985); *State v. Campbell*, 367 N.W.2d 454, 460 (Minn. 1985).

### III.

■ Appellant sought to introduce the testimony of psychiatrist Dr. Carl Malmquist. Dr. Malmquist had examined appellant prior to trial and would have testified that an ordinary person with appellant's prior history, put in the situation he was in on May 13, would have been vulnerable to

loss of control. The trial court ruled that Dr. Malmquist could testify about appellant's history, but he could not give his expert opinion concerning appellant's vulnerability to loss of control at the time the crime occurred because this was a question for the jury. Appellant reasserts on appeal that this ruling constituted an infringement of his right to present a defense and denied him due process.

■ The offer of evidence concerning appellant's "particular vulnerability to being provoked" is another way of requesting the submission of the defense of "diminished capacity." This doctrine is not recognized in Minnesota as a defense to criminal prosecution. While diminished capacity may well bear on the question of an appropriate sentence reduction after conviction, it is not relevant to the determination of guilt unless the capacity is diminished to the degree it amounts to mental illness or mental deficiency, so that the defendant "was laboring under such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong." Minn.Stat. § 611.026 (1986). *See State v. Bouwman*, 328 N.W.2d 703 (Minn.1982). Accordingly, the evidence of particular vulnerability to being provoked was properly excluded by the trial court. *See State v. Fratzke*, 354 N.W.2d 402, 409 (Minn.1984).

### IV.

In its final instructions to the jury the trial court instructed that if appellant acted in the heat of passion he could not be guilty of first or second degree murder. Heat of passion was defined as passion provoked by words or acts which would provoke a person of ordinary self-control in the same or like circumstances.

During deliberations the jury sent the following question back to the judge.

"Does like circumstances legally mean?

1. Night of the murder or

2. Past experiences (childhood background) or

3. Both?"

Over objection, the trial court responded that "Like circumstances means the cir-

cumstances existing on the morning of 5/13/86."

Appellant contends this response in effect limited the evidence which the jury considered in determining whether the crime was committed in the heat of passion and therefore denied him a fair trial.

■ In responding to a jury's question on any point of law, the trial court may "give any additional instructions as the court deems appropriate." Minn.R.Crim.P. 26.03, subd. 19(3). The court may amplify previous instructions, reread previous instructions or give no response at all. *State v. Murphy*, 380 N.W.2d 766, 772 (Minn. 1986).

■ We believe appellant makes too much of the trial court's response. The trial court did not instruct the jury to consider only the events of the night and to disregard the evidence of appellant's childhood background. The additional instruction of the court does not necessarily preclude consideration of appellant's background in determining whether he acted in the heat of passion. We are not persuaded the court's response was clearly erroneous.

### V.

Based on appellant's criminal history of 0 and a severity level X offense the presumptive guidelines sentence was 120 months. Appellant was sentenced to 180 months, based on the particular cruelty to the victim and her family, the particular vulnerability of the victim, and the past dangerousness of appellant.

■ We agree with appellant that the record does not support the use of victim vulnerability as a departure factor because the fact that Kunitz apparently was nude when strangled was not shown to be a substantial factor, if one at all, in appellant's accomplishing her death. *See State v. Gardner*, 328 N.W.2d 159, 162 (Minn. 1983). Similarly appellant's prior violent acts cannot be used as a departure factor. *State v. Lewis*, 385 N.W.2d 352, 357 (Minn. Ct.App.1986).

We find no abuse of discretion in the trial court's departure. The trial court has discretion to depart upwards when there are substantial and compelling circumstances. *State v. Garcia*, 302 N.W.2d 643, 645 (Minn.1981). Appellant's actions were particularly cruel to the victim. Insertion of keys and a lighter into the victim's body cavities, spray painting her body, tying ligatures around her neck and concealing the body, are sufficiently aggravating factors to support the upward departure. *See State v. Ming Sen Shiue*, 326 N.W.2d 648, 655 (Minn.1982); *State v. Jackson*, 370 N.W.2d 72, 74 (Minn.Ct.App. 1985), *pet. for rev. denied*, (Minn. Aug. 20, 1985).

## DECISION

Appellant was not denied a fair trial and the evidence was sufficient to convict him of murder in the second degree. The trial court did not abuse its discretion in imposing an aggravated sentence of 180 months imprisonment, a departure of 60 months.

Affirmed.