Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota County Atty., Hastings, for appellant.

C. Paul Jones, State Public Defender, Scott G. Swanson, Asst. State Public Defender, Minneapolis, Rick E. Mattox, First Dist. Public Defender, Eagan, for respondent.

Heard, considered, and decided by WOZNIAK, C.J., and SCHUMACHER and GARDEBRING, JJ.

**STATE of Minnesota, Appellant,**

v.

**Peggy Ann BARSNESS, Respondent.**

No. C2–89–1534.

Court of Appeals of Minnesota.

Oct. 13, 1989.

Review Granted Nov. 15, 1989.

OPINION

WOZNIAK, Chief Judge.

This is a pretrial appeal by the state from an order allowing respondent Peggy Barsness to present evidence of her I.Q. level in her defense. Barsness has been indicted for second degree murder, Minn. Stat. § 609.19(1) (1988) (with intent); third degree murder, Minn.Stat. § 609.195 (1988) (depraved mind); and manslaughter in the

second degree, Minn.Stat. § 609.205(1) (1988) (culpable negligence). We reverse.

## FACTS

Respondent Peggy Barsness is charged with various degrees of homicide in the death of her six-month-old daughter, Kirsten Barsness, whom the state alleges she left unattended the week of January 23 to 30, 1989.

On August 21, 1989, the day scheduled for trial to begin, the defense disclosed two reports concerning psychological evaluations and intelligence testing of Barsness. The state moved for an order excluding any expert testimony regarding Barsness' I.Q. and its effect on the element of intent. The court ruled it would allow expert testimony as to I.Q., leaving unclear the relevance of such evidence and the scope of the expert testimony the court would allow.

The state petitioned this court for a writ of prohibition, which was denied on the grounds that the state could file a pretrial appeal. Minn.R.Crim.P. 28.04, subd. 1(1). This appeal followed.

## ISSUE

1. Has the state shown that the trial court's ruling will have a critical impact on the outcome of trial?

2. Is the trial court's ruling clearly erroneous?

## ANALYSIS

■ The state in a pretrial appeal must show that the order appealed from is clearly erroneous and "significantly reduces the likelihood of a successful prosecution." *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn.1987).

The state contends the court's ruling will have a critical impact because it allows evidence from which the jury could infer that Barsness lacked the mental capacity to form the required intent or mental state. *See State v. Bouwman*, 328 N.W.2d 703, 706 (Minn.1982) (rejecting the doctrine of diminished responsibility). We agree. I.Q. evidence "does not relate to the physical evidence upon which the jury is to deter-

mine the issue of intent," *id.* at 705, and the state would have no way to rebut the improper inference.

The trial court's ruling may be preliminary in nature, as the dissent suggests. However, a ruling has been made, a ruling which is unquestionably appealable, *see* Minn.R.Crim.P. 28.04, subd. 1(1), and upon which this court must make a decision. Moreover, the ruling followed considerable discussion among counsel and the trial court based on the *Bouwman* decision and came at a point when no issue, other than intent or mental state, had been advanced to which I.Q. evidence might be relevant.

While the court's order pertains to evidence the defense may present, the state has a right to discover and anticipate the defenses and defense witnesses to be presented. *See generally* Minn.R.Crim.P. 9.02, subd. 1(3). If the state cannot meet the I.Q. evidence, the admissibility of which in effect overturns prior case law and allows diminished capacity to be suggested to the jury, the state is faced with an altered burden of proof as to mental state or intent.

Because we conclude that the critical impact standard is met, we do not address the state's argument that the standard applies only to orders suppressing evidence.

■ I.Q. evidence clearly is not admissible to show lack of intent or diminished capacity. *See Bouwman*, 328 N.W.2d at 706; *see also State v. Torkelson*, 404 N.W.2d 352, 356 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. June 25, 1987) (defendant charged with "culpable negligence" manslaughter of an infant was not allowed to present evidence of low intelligence); Minn.R.Crim.P. 20.02, subd. 1 (defendant may assert a defense of mental deficiency).

As our supreme court has held, the doctrine of diminished responsibility "inevitably opens the door to variable or sliding scales of criminal responsibility." *Bouwman*, 328 N.W.2d at 706, *quoting Bethea v. United States*, 365 A.2d 64, 88 (D.C. 1976).

The dissent suggests that I.Q. may be relevant to the circumstances of Barsness' confession. This issue was not raised in the trial court and is not before us. Indeed, no issue was raised in the trial court, other than intent or mental capacity, on which I.Q. evidence would have probative value. The admission of evidence posing such a danger of unfair prejudice to the state, as recognized in *Bouwman*, without countervailing probative value, is clearly erroneous. *See generally* Minn.R.Evid. 403. The lack of any perceivable basis for the court's ruling, which causes the dissent to characterize it as preliminary, is the very reason we must find it clearly erroneous. In those cases cited by the dissent in which appellate courts have not criticized such "preliminary" admission of diminished capacity evidence, *see State v. Fratzke*, 354 N.W.2d 402 (Minn.1984) and *State v. Lindberg*, 408 N.W.2d 589 (Minn.Ct.App.1987), there was no reason to reach a ruling that *must* be addressed in this case.

The dissent concludes that I.Q. evidence is "susceptible to quantification and lay understanding," *Bouwman*, 328 N.W.2d at 706, so as to fit within a *Bouwman* "exception." However, there is no record of expert testimony from which to draw that conclusion. The I.Q. figure cited for Barsness, from 74 to 79, is in a very borderline range of retardation, hardly comparable to infancy or to the example cited by the dissent. In the range of retardation suggested by the dissent, the law properly protects such individuals by allowing a defense of not guilty by reason of mental deficiency. *See* Minn.R.Crim.P. 20.02, subd. 1. In any event, this court is not in a position to suggest to the trial court that an extension of *Bouwman* is possible. That is a proper matter for the supreme court or for the legislature.

This court has previously ruled that evidence of low intelligence of a defendant charged with second degree manslaughter of an infant was properly excluded under *Bouwman*. *Torkelson*, 404 N.W.2d at 356; *see also State v. Lindberg*, 408 N.W.2d 589, 593 (Minn.Ct.App.1987) (court properly excluded expert testimony that defendant who had been abused was particularly vulnerable to being provoked). This court stated in *Lindberg:*

> While diminished capacity may well bear on the question of an appropriate sentence reduction after conviction, it is not relevant to the determination of guilt unless the capacity is diminished to the degree it amounts to mental illness or mental deficiency * * *.

Since the defense on the record before us only offered the I.Q. evidence for reasons relating to diminished capacity or lack of intent and no other theory, we must conclude that the pretrial order is a clear abuse of discretion and is clearly erroneous.

Reversed.

GARDEBRING, Judge (dissenting).

I respectfully dissent from the majority opinion, for two reasons. First, while I believe the critical impact standard is relevant here, I do not believe that the standard has been met. The record below is scanty, and does not allow us to understand fully the judge's basis for his ruling. Nevertheless, it is clear that his ruling is preliminary in nature, and there is no demonstrated threat to the state's case at this point. Further, the ruling does not affect the ability of the state to present its own case, as in a more typical critical impact case involving the suppression of evidence. Here, the evidentiary ruling only affects the theory of the defendant.

Second, I believe there may indeed be theories under which the I.Q. evidence may be admissible. The *Bouwman* decision identifies exceptions to the general rule that evidence of diminished capacity is not admissible on the issue of intent. The exceptions include intoxication, medication, epilepsy, infancy or senility. *See State v. Bouwman*, 328 N.W.2d 703, 706 (Minn. 1982). The justification for these exceptions is that they are "susceptible to quantification and lay understanding." *Id.* I believe that evidence of limited intelligence, or borderline mental retardation, is analogous to the *Bouwman* exceptions in that it is not an issue of esoteric psychiatric analy-

sis, but rather a matter of common, lay experience.

One common way of expressing mental retardation is by mental age.[1] Therefore, I conclude that I.Q. may be, in the instance of mental retardation, closely aligned to the *Bouwman* exception for infancy. If *Bouwman* allows admission of evidence that a defendant is a child, shouldn't evidence that one's mental capacity is that of a child also be relevant?

Furthermore, the trial court at this point has allowed only evidence of Barsness' level of intelligence, without allowing expert testimony on the effect of that I.Q. on her mental state. Even those cases strictly applying *Bouwman* have not criticized trial courts for allowing the bare evidence of a mental or emotional condition. *See State v. Fratzke*, 354 N.W.2d 402, 408–09 (Minn. 1984) (expert who had also been allowed to express an opinion on defendant's ability to exercise good judgment, should not have been allowed to theorize whether defendant had the ability to *plan*); *State v. Lindberg*, 408 N.W.2d 589, 593 (Minn.Ct.App. 1987) (expert who testified preliminarily on defendant's prior experiences of physical and sexual abuse, was properly prevented from testifying as to his "particular vulnerability to being provoked").

Relevancy of the I.Q. evidence may also exist insofar as it may bear on the weight and credibility of Barsness' statement to police. *See Crane v. Kentucky*, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (defendant was denied a fair trial where the trial court excluded evidence bearing on credibility of his confession). The voluntariness of a confession is an issue to be resolved by the court. *State v. Orscanin*, 283 N.W.2d 897, 901 (Minn.1979), *cert. denied*, 444 U.S. 970, 100 S.Ct. 464, 62 L.Ed.2d 385 (1979). The jury determines the weight and credibility of the confession, using many of the same factors:

> the age, maturity, *intelligence*, education, and experience of the defendant and the ability of the defendant to comprehend; the lack of or adequacy of warnings; the length and legality of the

detention; the nature of the interrogation; whether the defendant was deprived of any physical needs; and whether the defendant was denied access to friends.

*State v. Jungbauer*, 348 N.W.2d 344, 346 (Minn.1984) (emphasis added) (factors bearing on voluntariness).

This theory was not argued to the trial court, but may provide an alternative basis for admission.

Finally, I would note that the rule in Minnesota is that evidentiary rulings rest in the discretion of the trial judge, and will not be reversed on appeal absent a clear abuse of discretion. *State v. Anderson*, 370 N.W.2d 653, 664 (Minn.Ct.App.1985). *See also State v. Olkon*, 299 N.W.2d 89, 101 (Minn.1981), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). Under the facts in the case, I find no abuse of discretion, and therefore would affirm the trial court's ruling.

---

**1.** Classification in Mental Retardation 32–34, 183 (H. Grossman ed.1983).