STATE of Minnesota, Respondent,

v.

Antione NMN LEWIS, Appellant.

No. C3–01–508.

Court of Appeals of Minnesota.

Feb. 12, 2002.

Mike Hatch, Attorney General, Thomas Rolf Ragatz, Office of the Attorney General, St. Paul, and Roger S. Van Heel, Stearns County Attorney, St. Cloud, for respondent.

Michael Clinton Davis, Special Assistant State Public Defender, St. Paul, for appellant.

Considered and decided by TOUSSAINT, Chief Judge, HALBROOKS, Judge, and FOLEY, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

TOUSSAINT, Chief Judge.

Appellant Antione Lewis, appeals his conviction of felony drive-by shooting, contending that the evidence was insufficient to establish that he fired a firearm "having just exited from a motor vehicle." In a supplemental pro se brief, Lewis also contends that (1) the district court abused its discretion in denying his motion for a change of venue; (2) his accomplice's testimony was not sufficiently corroborated to support his conviction; and (3) he was denied the right to the effective assistance of counsel. Because we conclude that (1) the record contains sufficient evidence to support the jury's finding that Lewis committed a drive-by shooting; and (2) Lewis's pro se claims lack merit, we affirm.

## FACTS

On March 7, 2000, a man with dark hair, wearing a dark, hooded sweatshirt jumped out of a brown mini-van that had just pulled into the parking lot at South Side Park, in St. Cloud. The man ran to the basketball court and began firing a small silver gun, and then the shooter ran back to the mini-van and left the park. Amy Brown, a park occupant, identified Lewis as the shooter. T.H., a passenger in the mini-van, also identified Lewis as the shooter. Varying accounts of Lewis' acts were presented allowing the jury to determine how much time passed from the time Lewis got out of the mini-van to the time he starting shooting.

Lewis was charged with two counts of attempted murder in the first degree and six counts of assault in the second degree. The jury found him guilty of two counts of first-degree attempted murder, two counts of drive-by shooting under Minn.Stat. § 609.66, subd. 1(e) (2000), and five counts

of second-degree assault. The trial court sentenced him to the presumptive 220 to 240 month sentence for the two attempted first-degree murder convictions, and to three 60 month terms for the second-degree assault convictions, the sentences to run concurrently.

## ISSUES

I. Does the record contain sufficient evidence that Lewis discharged a firearm "having just exited from a motor vehicle" within the meaning of Minn.Stat. § 609.66, subd 1e (2000)?

II. Is the testimony of Lewis' accomplice sufficiently corroborated to support Lewis' conviction?

III. Did the trial court abuse its discretion by denying Lewis's motion to change the venue?

IV. Did Lewis receive ineffective assistance of counsel?

## ANALYSIS

### I.

*Sufficiency of Evidence*

Lewis first argues that the evidence is insufficient to support his conviction of felony drive-by shooting because it does not establish that he discharged a firearm "while having just exited from a motor vehicle." *See* Minn.Stat. § 609.66, subd. 1e (2000). Specifically, Lewis argues that the act of shooting was too remote from the act of exiting the vehicle to constitute a drive-by shooting within the meaning of Minn.Stat. § 609.66, subd. 1e.

When reviewing the sufficiency of the evidence to support a conviction, this court's review is limited to "a painstaking analysis of the record to determine

whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). And we will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude the defendant was guilty of. the charged offense. *State v. Alton*, 432 N.W.2d 754, 756 (Minn.1988).

Under Minnesota law, a person who "while in or having just exited from a motor vehicle, recklessly discharges a firearm at or toward another motor vehicle or a building" is guilty of felony drive by shooting. Minn.Stat. § 609.66, subd. 1e. Whether the evidence is sufficient to support Lewis' conviction depends upon whether Lewis fired at people on the basketball court "having just exited from a motor vehicle" within the meaning of Minn.Stat. § 609.66, subd. 1e.

■ Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). If the statutory language is plain and unambiguous, the court must give the language its plain meaning. *Tuma v. Comm'r of Econ. Sec.*, 386 N.W.2d 702, 706 (Minn. 1986).

■ The statute does not define the phrase "having just exited from a motor vehicle." But the meaning of the phrase is clear and requires no interpretation. The dictionary defines the word "just" as "only a moment ago" American Heritage Dictionary, 979 (3d ed.1996). Accordingly the phrase "having just exited" means having exited "only a moment ago." The phrase requires the completed act of exiting from a motor vehicle followed closely by the act of shooting. In applying the plain meaning of the statute, we construe the phrase "having just exited a motor vehicle" as requiring the immediate action of shooting following the exiting from an automobile.

■ Lewis argues the act of shooting must occur simultaneously with the act of exiting. However, Lewis' interpretation of the phrase is implausible because it is contrary to the plain meaning and is impossible to execute.

The record amply supports the jury's finding that Lewis drove up to the park, jumped out of a brown mini-van, ran to the occupied basketball court and began shooting within one to two minutes from the time he exited the mini-van. He then retreated to the vehicle and drove away. Angela Barrett, who was near the volleyball courts at the time of the shooting, testified that the shooter, carrying a small silver gun, ran from a brown mini-van in the parking lot and began shooting. Amy Brown testified that after a brown mini-van pulled up in the park parking lot, Lewis jumped out and ran to the basketball court in a matter of one or two minutes. Aaron Larson, a basketball player, testified that a man wearing a hooded sweatshirt ran from the playground onto the court, fired a gun, and then ran back to a mini-van in the parking lot.

The plain meaning of "just exited" indicates that the act of shooting must immediately follow the act of exiting an automobile. *See* Minn.Stat. § 609.66, subd. 1e. Viewing the evidence in a light most favorable to the state, the testimony that Lewis ran from the mini-van to the basketball court, and opened fire, then returned to the mini-van and drove away, is more than sufficient to support the jury's finding that Lewis engaged in a felony drive by shoot-

ing as defined in Minn.Stat. § 609.66, subd. 1e.

## II.

In a pro se supplemental brief Lewis argues that (1) his accomplice's testimony was not sufficiently corroborated to support his conviction; (2) the trial court abused its discretion by denying his motion for a change of venue; and (3) he was deprived of the effective assistance of counsel.

*Accomplice Testimony*

■■■ Lewis first argues that the trial court erred in admitting the accomplice testimony of T.H. because it lacked sufficient corroboration. We review the sufficiency of the evidence corroborating an accomplice's testimony in the light most favorable to the state, and resolve all conflicts in the evidence in favor of the verdict. *State v. Hooper,* 620 N.W.2d 31, 39 (Minn.2000). Corroborative evidence must be "weighty enough to restore confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial way." *Id.* (quoting *State v. Norris,* 428 N.W.2d 61, 66–67 (Minn.1988)). Corroborative evidence "may be secured from * * * the defendant's opportunity and motive to commit the crime and his proximity to the place where the crime was committed." *State v. Adams,* 295 N.W.2d 527, 533 (Minn.1980) (citation omitted).

■■■ T.H. testified that he was with Lewis in the park prior to the shooting, when Lewis got into an argument with a man in a white car. Lewis and T.H. left the park in a brown mini-van and drove to a nearby home. Lewis entered the home and emerged a few minutes later with a gun wrapped in a towel. Lewis then drove back to the park. After entering the parking area, Lewis got out of the mini-van and proceeded to the basketball court. He pulled the hood of his sweatshirt up and began shooting. After several gunshots, Lewis ran back to the mini-van and left the park. Lewis handed T.H. the gun and told him to take care of it, so T.H. hid the gun in the back of the toilet at his girlfriend's house. The police later recovered the gun and matched it to the shell casings at the park.

T.H.'s testimony was sufficiently corroborated by much of the evidence presented at trial. Several witnesses testified that the shooter was wearing a dark hooded sweatshirt; that he ran from a brown mini-van to the basketball court on South Side Park and began shooting. Police recovered a blue and black hooded sweatshirt from a car Lewis was arrested in near the park following the shooting. Three witnesses testified that after shooting, the shooter ran back to the mini-van he had exited from and drove away. The evidence viewed in the light most favorable to the state sufficiently corroborates T.H.'s testimony and points to Lewis's guilt in a substantial way.

*Motion to Change Venue*

Lewis next argues that because local newspaper and radio stations covered news of the shooting and referred to Lewis as having gang affiliation, the trial court abused its discretion in denying his motion for a change of venue.

The trial court denied Lewis's motion finding that it was impossible to determine the impact of the local news stories on the jury pool before voir dire. But the court indicated that Lewis could renew his motion if the voir dire indicated that bias was present. Lewis made no further motions on the issue.

■■■ Trial courts have wide discretion in deciding motions for a change of venue. *State v. Fratzke* 354 N.W.2d 402, 406 (Minn.1984). The denial of a motion

for a change of venue will be sustained absent a clear abuse of discretion. *Id.* An abuse of discretion occurs when the evidence is such that "a real possibility exists that a jury will not render an unprejudiced or unbiased verdict." *State v. Webber,* 292 N.W.2d 5, 12 (Minn.1980) (quoting *State v. Hogan,* 297 Minn. 430, 437, 212 N.W.2d 664, 669 (1973)).

The rules of criminal procedure require that a change of venue motion be granted when "the dissemination of potentially prejudicial material creates a reasonable likelihood that in the absence of such relief, a fair trial cannot be had." Minn. R.Crim. P. 25.02, subd. 3. Widespread publicity alone does not mandate a change of venue. *Fratzke,* 354 N.W.2d at 406. Instead, the question is whether the publicity is "prejudicial to the defendant and whether it affects the minds of the specific jurors involved in the case." *Id.* Factual news reports are insufficient to establish prejudice. *State v. Salas,* 306 N.W.2d 832, 835 (Minn.1981). Opinions or implications of the defendant's guilt are required instead.

The record contains press releases about the shooting published in the local paper and copies of the story read on a local radio station. The newspaper article is based upon the criminal complaint. It identified Lewis as the party charged, but it contained no opinions or implications as to his guilt. The radio story contained repeated references to a gang-related shooting, but did not refer to Lewis as affiliated with a gang or contained "damaging opinions of public officials" who directly implicated Lewis. *Id.* In the absence of other evidence of prejudice, the exposure of some jurors to news reports before trial, does not establish "that the jury was biased." *See id.* at 836.

Because the record contains no evidence that the pretrial publicity prejudiced Lew-

is, the trial court did not abuse its discretion in denying Lewis's motion for change of venue.

*Assistance of Counsel*

We defer Lewis' claim of ineffective-assistance of counsel to allow Lewis to raise it in a post-conviction petition. *See State v. Gustafson,* 610 N.W.2d 314, 321 (Minn.2000).

**DECISION**

The evidence supports the jury's finding that Lewis discharged a firearm "having just exited a motor vehicle." The trial court did not abuse its discretion by admitting accomplice testimony and did not err in denying appellant's motion to change venue. Finally, appellant's ineffective assistance of counsel claim is deferred.

**Affirmed.**